**Ralph O. HUTCHENS, Appellant,**

v.

**Louis D. FAAS, Bernice H. Faas, Leonard A. Faas, Genevieve E. Faas, Co-partners doing business as King O'Lawn Manufacturing Co., Walter Faas, Rudolph Faas, M. W. Engleman, Assignee for Benefit of Creditors for King O'Lawn Manufacturing Co., King O'Lawn, Inc., a California Corporation, Appellees.**

**No. 15115.**

United States Court of Appeals Ninth Circuit.

July 1, 1957.

**466**

William C. Babcock, Long Beach, Cal., for appellant.

Lyon & Lyon, John B. Young, Los Angeles, Cal., for appellees.

Before LEMMON, FEE and BARNES, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is a suit for infringement of Letters Patent No. 2,618,919, granted to Ralph O. Hutchens on November 25, 1952, and No. 2,719,398, granted to Ralph O. Hutchens on October 4, 1955. These patents both exemplified lawn trimming and edging apparatus. The defendants, partners doing business under the name of King O'Lawn Manufacturing Co.,[1] had made, sold and used devices of the same general nature in the same field which Hutchens claimed infringed both of his patents. Based upon a stipulation as to prior public use of certain apparatus of like character, it was agreed that the suit should be dismissed with prejudice as to Hutchens' Patent No. 2,618,919,[2] and also that the effective filing date of Hutchens' Patent No. 2,719,398 [3] is June 16, 1950. Thereafter, the second amended complaint was filed, which sets up infringement of the latter patent '398 only. The answer denies infringement, pleads invalidity of '398, sets out several claimed anticipatory patents, and alleges prior art devices which prevented novelty in the patented device. There is an allegation that '398 is invalid for double patenting and that substantially the same elements of the combination claimed in '919 are present in '398. It is also set up that the claims of the latter patent '398 cannot be construed broadly.

After a trial, the District Court did not consider the question of validity of '398, but held that the claims of the patent in suit must be narrowly construed and that the devices of King O'Lawn did not infringe upon the claims of '398. From the judgment, appeal was taken.

Hutchens bases the contention that the judgment must be reversed upon the validity of the patent '398. On the other hand, King O'Lawn urges that not only must the order of the District Court be affirmed, but that, if there be a reversal on the issue of infringement, this Court should go further on the record and ad-

---

1. Hereinafter called "King O'Lawn."

2. Hereinafter referred to as " '919."

3. Hereinafter referred to as " '398."

judge the patent '398 invalid, irrespective of the fact that the trial court did not pass upon the issue. It is true it has been held by the United States Supreme Court that the question of validity or invalidity should always be ruled upon prior to an adjudication of infringement,[4] but it has since been held that there are limitations on such a rule.[5]

■ Since the District Court confined itself to the question of infringement, this Court will rule on that question only. We are not given power to find facts, as the trial courts are. And invention is a question of fact, in ordinary circumstances such as are found here.[6]

■ Both the patents of plaintiff and the accused devices of defendant have the purpose of providing a single convenient machine for lawn trimming and edging, in which the apparatus for each of these operations can be used simultaneously or separately and the lateral apparatus of which is adjustable so as to operate in conformity with the contour of the surface. Technical analysis of these various machines as a whole is unnecessary in the disposition of this case. Plaintiff at first took the position that the devices of defendant infringed his patent '919, and brought suit therefor. As has been noted above, an amended complaint was filed, alleging infringement of '398, and by stipulation the claim of infringement of the first patent was thus withdrawn from suit. By this action, plaintiff himself drew the parallel between his two patents.

■ Thus the claims of '398 must be given a very narrow construction. Patent '919 of plaintiff was granted November 25, 1950. There was evidence that machines embodying all the distinctive features thereof had been publicly used and had been sold to the public by plain-

tiff more than two years before October 4, 1955, the date assigned to patent '398. Here it must be noted that plaintiff cannot relate '398 back in order to gain the advantage of the invention date of '919. Therefore, '398 must stand on its own foundation.

■ Plaintiff seems to claim invention in the new aggregation or combination in Claim 16, which reads in part:

" * * * wheel means that movably support said base for angular adjustment thereof relative to the surface on which said wheel means rests, a handle extending upwardly and rearwardly from said base for guiding same; * * *."

The other Claims 6, 7, 8, 9, 10 and 15, as to this point, require:

" * * * wheel means that movably support said engine support and permit angular adjustment thereof relative to a surface on which said wheel means rests, a handle extending upwardly and rearwardly from said engine support that permits guidance and angular adjustment thereof relative to the ground surface, * * *."

Defendant admitted that the accused devices contain a construction described as:

" * * * an engine-supporting base mounted on wheels which base can be angularly adjusted relative to the surface on which said wheels rest."

Plaintiff says this constitutes an admission of infringement. But it is notable that there is an admission that the accused structure has a base which can be adjusted angularly. Since the adjustment in such device is accomplished by an apparatus employing leverage or link-

4. Sinclair & Carroll Co. v. Interchemical Corporation, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644.

5. "This language [in Sinclair, supra] has been generally understood as a mere cautionary admonition to the courts to exercise their discretion whether to pass upon the question of validity, and to

strike down clearly invalid patents where it would be in the public interest to do so, even though a finding of non-infringement would dispose of the case." Kemart Corporation v. Printing Arts Research Laboratories, 9 Cir., 201 F.2d 624, 634.

6. See Berkeley Pump Co. v. Jacuzzi Bros., 9 Cir., 214 F.2d 785.

age systems, it is clear to us that there was no admission that the wheel means movably support the base for such adjustment.

The trial court found as to one of the characteristic machines of defendant as follows:

"The accused device * * * employs three wheels for supporting the frame of the machine. Two rear wheels are mounted to rotate about a common axis and the third front wheel is mounted on an arm pivoted to the frame. The frame may be raised and lowered with respect to the front wheel by means of a lever system connected to the arm. A sleeve fixed on the frame telescopically receives a longitudinal rod and the forward end of the rod carries a housing. Bearings in the housing support a transverse shaft carrying a cutter blade and a driven pulley. The pulley is belt driven from an engine on the frame. The rod, housing, shaft, cutter blade and driven pulley can be turned about the rod axis so that the cutter blade can operate vertically or horizontally or at inclined positions, as required. Friction clamp means are provided to maintain the rod in the desired angular position."

The trial court found that this art was an extremely crowded field, in part because of the existence of '919 and certain other devices which it is unnecessary to discuss.

As noted above, this Court does not intend to discuss the validity of either patent. However, consideration of certain language of '919, together with the language of the claims in issue above quoted, further indicates that, in this particular at least the scope of the patent in suit was extremely narrow.

The emphasis in the claims above quoted is the use of the "handle" "that permits guidance and angular adjustment thereof relative to the ground surface." In Claim 16, the handle described "as extending upwardly and rearwardly from said base for the purpose of guiding the same" thus performs an essential part in guiding the base in the "angular adjustment thereof relative to the surface on which said wheel machine rests."

Now the accused devices have handles which are not used for any such purpose or in any such way whatsoever.

That the handle is an essential to the device of plaintiff, exemplified in '398, is seen more clearly by certain language of that patent:

"Another important object of the invention is to provide a device of the character set forth having ground support in a single vertical plane to permit controllable tilting of the device while in operation, which facilitate turning and backing redirection thereof with a minimum of operator effort, as well as maintaining the cutting blade of the device in such position that grass is trimmed to the desired height, and without gouging or disturbing the appearance of the lawn surface bearing the weight of the device."

and

"Guidance and manipulation of the unit is conveniently provided by a conventional single shaft mower-type handle 20 rigidly secured as by brackets 21 to the base 10. As illustrated, the handle 20 extends upwardly and rearwardly from the base 10 in substantially the vertical plane of the wheel 16. Thus, by tilting of the handle, the position of the whole structure may be varied relative to the ground surface. While the present single wheel arrangement permits turning movement when the handle is moved to one side of the longitudinal axis of the device, the tilting feature when limited to lateral adjustment could also be carried out by a plural wheel device in which a second load-supporting wheel is mounted in line with the present wheel 16. Tiltability has an important function in operation of the present invention, for although the blade may be adjusted to various angularities, a tilt-

ing of the whole unit in any desired direction may avoid the necessity for blade adjustments, and hence greatly ease manipulation of the invention."

Since the devices of defendant attain similar results without the use of the handle and by radically different means, the trial court was correct in holding there was no infringement. In any event, there is no clear error.

Affirmed.