**M. O. S. CORPORATION, Appellant,**
v.
**JOHN I. HAAS CO., Inc., Appellee.**
**No. 20750.**

United States Court of Appeals
Ninth Circuit.
March 21, 1967.

Robert S. Dunham, New York City, Kenneth C. Hawkins, Yakima, Wash., for appellant.

George C. Twohy, Yakima, Wash., C. Willard Hayes, Edgar H. Martin, Cushman, Darby & Cushman, Washington, D. C., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and CROCKER, District Judge.

DUNIWAY, Circuit Judge:

Appellant, the holder of the patent in suit, appeals from a judgment in favor of appellee in an action for infringement. This is the second appeal in this case. In

M. O. S. Corp. v. John I. Haas Co., 9 Cir., 1964, 332 F.2d 910, we reversed a judgment in favor of appellee. We held that it was error for the trial court to apply the doctrine of file wrapper estoppel in deciding that the patent was not infringed. We did not rule on the validity of the patent. Upon remand, the trial court received additional evidence. It again found that the patent was not infringed, but did not pass upon its validity, although that question was expressly raised by appellee, was stated as an issue in the amended pretrial order, and was litigated. On the present appeal, we affirm, but on the ground that the patent is invalid, rather than that appellee did not infringe.

Ordinarily, we would confine ourselves to the grounds for decision acted upon by the trial court. The Supreme Court, however, has announced certain policies applicable to patent litigation that convince us that we should consider the validity of the patent in this case, even though the trial court did not pass upon the question, confining itself to a holding that there was no infringement.

"A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market. The far-reaching social and economic consequences of a patent, therefore, give the public a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope."

Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 1945, 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89 L.Ed. 1381.[1]

This substantive policy is accompanied and implemented by a procedural admonition, stated by Mr. Justice Jackson in Sinclair & Carroll Co. v. Interchemical Corp., 1945, 325 U.S. 327, at 330, 65 S.Ct. 1143, at 1145, 89 L.Ed. 1644:

"There has been a tendency among the lower federal courts in infringement suits to dispose of them where possible on the ground of non-infringement without going into the question of validity of the patent. Irvin v. Buick Motor Co., [8 Cir.,] 88 F.2d 947, 951; Aero Spark Plug Co. v. B. G. Corp., [2 Cir.,] 130 F.2d 290; Franklin v. Masonite Corp., [2 Cir.,] 132 F.2d 800. It has come to be recognized, however, that of the two questions, validity has the greater public importance, Cover v. Schwartz, [2 Cir.,] 133 F.2d 541, and the District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."

At first, this court, as well as the other Courts of Appeals, had some

1. See also Walker Process Equip., Inc. v. Food Machinery and Chemical Corp., 1965, 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247. Both *Precision Instrument* and *Walker* involved fraud on the Patent Office, resulting in the invalidity of the patent. Other decisions indicate that the policy is equally applicable in patentability cases. See Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 91–92, 62 S.Ct. 37, 86 L. Ed. 58; Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 1950, 340 U.S. 147, 152–153, 71 S.Ct. 127, 95 L.Ed. 162; Graham v. John Deere Co., 1966, 383 U.S. 1, 10–19, 86 S.Ct. 684, 15 L.Ed.2d 545. Cf. Sears, Roebuck & Co. v. Stippel Co., 1964, 376 U.S. 225, 228– 231, 84 S.Ct. 784, 11 L.Ed.2d 661. The Courts of Appeals have repeatedly applied the same policy in cases involving patentability. John Deere Co. v. Graham, 8 Cir., 1964, 333 F.2d 529, 535; affirmed, Graham v. John Deere Co., 1966, 383 U. S. 1, 86 S.Ct. 684; Rota-Carb Corp. v. Frye Mfg. Co., 8 Cir., 1963, 313 F.2d 443, 444; Caldwell v. Kirk Mfg. Co., 8 Cir., 1959, 269 F.2d 506, 508; Houston Oil Field Material Co. v. Claypool, 5 Cir., 1959, 269 F.2d 134, 136; Long v. Arkansas Foundry Co., 8 Cir., 1957, 247 F.2d 366, 369; Hycon Mfg. Co. v. H. Koch & Sons, 9 Cir., 1955, 219 F.2d 353, 355–56; Bulldog Elec. Prod. Co. v. Westinghouse Elec. Corp., 2 Cir., 1947, 162 F.2d 994, 997.

difficulty in deciding whether this was a rule or only an admonition.[2] However, it is now settled that it is an admonition.[3] This, however, does not mean that it is to be lightly disregarded. It does mean that in some cases the policy announced cannot be directly applied by the Court of Appeals, as in a case where the issue was not litigated in the trial court. In such a case, because there is no sufficient record upon which to base a decision, the Court of Appeals has an option to follow the trial court and decide only the issue decided by that court;[4] or to remand for a trial of the validity or patentability issue when that seems appropriate.[5] But if the issue was litigated in the trial court, and if the record presented is such as to permit decision, the Court of Appeals can, and, at least where the answer seems clear, should decide the issue.[6] While it has often been said that patentability is a question of fact, it is also true that in patent cases, as in most others, the record in the particular case may be such that the question becomes one of law. Indeed, while fact finding is essential to the presentation of the question, the ultimate question, in the light of the facts disclosed by the record and found by the trial court, is always one of law.[7] Here, we think that the record and the findings present a question of law, which we can and do decide. Our doing so is a particular application of the more general rule that a Court of Appeals may affirm on any ground squarely presented on the record, even though the trial court may have based its decision on a different ground.[8]

In the present case, the trial court followed "the better practice" in part. Appellee expressly attacked the validity of the patent. The court received much evidence as to the prior art, the need that was to be met in the industry, and the nature and success of the claimed invention, as well as the differences between the patented invention and the appellee's methods. But it confined its decision to the question of infringement, relying upon the prior art to support its view that the patent should have a narrow, rather than a broad construction.

2. Pennington Engineering Co. v. Spicer Mfg. Co., 6 Cir., 1947, 165 F.2d 59, 61; Wabash Corp. v. Ross Elec. Corp., 2 Cir., 1951, 187 F.2d 577, 581–583; Patent Scaffolding Co. v. Up-Right, Inc., 9 Cir., 1952, 194 F.2d 457, 459–462; Kierulff v. Metropolitan Stevedore Co., 9 Cir., 1962, 300 F.2d 614, 615–616.

3. Helbush v. Finkle, 9 Cir., 1948, 170 F. 2d 41, 42; Patent Scaffolding Co. v. Up-Right, Inc., supra, n. 2; Kemart Corp. v. Printing Arts Research Labs, Inc., 9 Cir., 1953, 201 F.2d 624, 634; Hutchens v. Faas, 9 Cir., 1957, 249 F.2d 465, 467; Wabash Corp. v. Ross Electric Corp., supra, n. 2, and see the dissent of Judge Frank, 187 F.2d 586 ff.

4. See Hutchens v. Faas, supra, n. 3; Wabash Corp. v. Ross Elec. Corp., supra, n. 2.

5. Helbush v. Finkle, supra, n. 3; Wabash Corp. v. Ross Elec. Corp., supra, n. 2; Hycon Mfg. Co. v. H. Koch & Sons, supra, n. 1; Long v. Arkansas Foundry Co., supra, n. 1.

6. Pennington Engineering Co. v. Spicer Mfg. Corp., supra, n. 2; Wabash Corp. v. Ross Elec. Corp., supra, n. 2; Powder Power Tool Corp. v. Powder Activated Tool Co., 7 Cir., 1956, 230 F.2d 409, 415;

Bliss v. Gotham Industries, Inc., 9 Cir., 1963, 316 F.2d 848, 851; Royal-McBee Corp. v. Smith-Corona Marchant, Inc., 2 Cir., 1961, 295 F.2d 1, 3; Guiberson Corp. v. Equipment Engineers, 5 Cir., 1958, 252 F.2d 431, 432; Maytag Co. v. Murray Corp., 6 Cir., 1963, 318 F.2d 79, 80. This, however, is subject to the rule that if the patent is not infringed, it should not also be held valid. The admonition is limited to those cases in which the patent is invalid. Kemart Corp. v. Printing Arts Research Labs, supra, n. 3; see Electrical Fittings Corp. v. Thomas & Betts Co., 1939, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263.

7. Bergman v. Aluminum Lock Shingle Corp., 9 Cir., 1957, 251 F.2d 801, 803; particularly the concurrence of Judge Pope, pp. 809 ff; Jeddeloh Brothers Sweed Mills, Inc. v. Coe Mfg. Co., 9 Cir., 1967, 375 F.2d 85 (decided March 3, 1967); Hensley Equip. Co., Inc. v. Esco Corp., 9 Cir., 1967, 375 F.2d 432 (decided March 3, 1967).

8. Jaffke v. Dunham, 1957, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314; Dessar v. Bank of America, 9 Cir., 1965, 353 F.2d 468, 470; C. I. R. v. Stimson Mill Co., 9 Cir., 1943, 137 F.2d 286.

The patent in suit is the Meisler Patent, No. 2,674,535. The principal claim is No. 1, which reads as follows:

"1. A method for shipping hops comprising the steps of compressing at least one bale of hops of rectangular cross section into a bale of circular cross section, fastening the bale of circular cross section with spaced flexible members disposed transversely therearound, placing the bale of circular cross section into two steel drums with the flanges around the open ends thereof superposed, and sealing the superposed flanges of the drum."

Claims 2–5 depend upon claim 1.[9] Claim 6 reads:

"6. A container for a bale of hops formed into a unit of circular cross section, the container comprising two drums with open ends, the open end of each drum having an outwardly and thence inwardly directed flange circumferentially formed therearound and the flanges being superposed to form an outer circumferential recess therebetween, a rubber tube disposed in the recess, an adhesive strip disposed over the tube and the contiguous outer surface portions of the flanges, a resilient band disposed over the adhesive strip and the contiguous outer surface portion of the flanges, a plurality of spaced clips transversely disposed around the resilient band and the contiguous outer surface portions of the flanges, and means for exhausting the air from the drums."

Claim 7 is the same except that it substitutes a continuous steel channel member for the resilient band and clips. Claim 8 returns to the method outlined in claim 1, but described the compression of two bales instead of "at least one bale," the two being compressed into a cylinder that will fit into two steel drums, inserting a preservative, and sealing the joint between the drums. Claim 9 is similar, but substitutes for the preservative the exhaustion of air and replacing it with

inert nitrogen. Appellant asserted infringement of claims 1, 2, 6, 7, 8 and 9.

As background, the record shows, and the patent recites, that hops are commonly shipped in burlap bags of rectangular shape approximately 60″ x 22″ x 30″ and weighing from 180 to 200 lbs. The packing is not so tight as to require banding the bags, although a bag is called a "bale," and is what is referred to as a bale in claims 1, 6, 7, 8 and 9. Hops do not keep or ship well; they can be damaged by too much compression and by air, odors, moisture, acids, or poor handling. The previous practice, where it is desired to protect them from these dangers, has been to stack two bales on their sides, compress them from a combined height of 60″ to 18″, producing an oblong bale about 60″ x 23″ x 18″, tie the bale thus produced, and pack it in a specially built airtight metal box. Such packing is important in the export trade. The practical advantage of the method of Meisler is that it utilizes two standard 55 gallon drums of the type common in the oil industry, without undoing the two bales that are compressed.

It is not asserted that the various steps outlined in Meisler's method are novel or patentable, nor could it be. In this connection, the court made certain findings, in its opinion and in its formal findings, which we quote:

"In examining the record with respect to the prior art the following facts are clearly established by the record:

1. It is admitted that pressing hops into a desired shape is not new. The long-standing practice in the industry was to press the bales into rectangular shapes.

2. Pressing baled materials of square cross section into a circular cross section is not new. See Patent No. 1,418,-441 (Howcott, 1922), Exhibit # 73.

3. Using two cylindrical containers fastened together to form a single con-

---

9. These claims merely add, respectively, to claim 1, exhaustion of the air in the drums (claim 2), replacing it with inert nitro-gen (claim 3), replacing it with sulphur dioxide (claim 4), and inserting activated alumina (claim 5).

tainer is not new. See British Patents Nos. 14,946 (Whatmough, 1898), Exhibit # 44; 618,912 (Young, 1949), Exhibit # 47; and 624,194 (Shakesby, 1949), Exhibit # 48.

4. Using a cylindrical, separable container to store hops is not new. See German Patent No. 7235 (Schmidt, 1879), Exhibit # 53.

5. Using a single cylinder for housing baled materials is not new. See U.S. Patent No. 535,751 (Campbell, 1895), Exhibit # 58.

The plaintiff argues for a 'liberal' construction of the patent; but, as the patents cited indicate, the inventional crevasse into which the plaintiff's patent fits is quite narrow indeed. A broad construction in view of the prior art would present a serious question as to the patent's validity."

\* \* \* \* \*

"On its face, the patent in suit is at best only a narrow improvement over the prior art method of shipping hops wherein two superposed recompressed standard ranch bales of rectangular cross section are packaged and sealed in custom built, metal-lined cases, and therefore, must be narrowly and strictly construed."

\* \* \* \* \* \*

"In addition to the prior art practice of shipping recompressed bales of hops in custom built, metal-lined cases, the permissible construction of the claims of the patent in suit is further limited by the prior art U.S. Patent to Howcott, No. 1,418,441, issued June 6, 1922, the 1948 Hind publication (Exhibit 40), and the 1900 Gross publication (Exhibit 41). None of these prior art publications were before the Patent Office during the prosecution of the patent in suit.

"The 1922 patent to Howcott discloses the steps of compressing a bale of rectangular cross section into a bale of circular cross section and fastening the bale of circular cross section with wire bale ties.

"Both the 1948 Hind publication and the 1900 Gross publication disclose the packaging of a cylindrical bale of hops in a single drum."

These findings are fully supported by the record, but we think that they compel the conclusion that "the inventional crevasse into which the plaintiff's patent fits is \* \* \* [so] narrow \* \* \*" as to be non-existent.

■ Appellant asserts that patentability is in the combination of the elements found by the court, and the application of that combination to the packing and shipment of hops, with particular emphasis upon the "densifying of the initial bale components by recompression and, during such recompression, conversion of the bale from a rectangular cross-sectional shape to one of circular cross-section." (Testimony of appellant's witness, Beach, quoted in appellant's brief, p. 11). We are of the opinion that, in the light of the findings, this cannot be patentable.

The test of patentability is set forth in section 103 of the Patent Act (35 U.S. C. § 103), enacted in 1952:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

■ While the Meisler patent was issued in 1951, the decision in Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, makes it clear that section 102 "was not intended by Congress to change the general level of patentable invention. \* \* \* [It] was intended \* \* \* as a codification of judicial precedents embracing the *Hotchkiss* condition \* \*." (383 U.S. at 17, 86 S.Ct. at 693.) The *Hotchkiss* condition is that

"[U]nless more ingenuity and skill * * * were required * * * than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skilful mechanic, not that of the inventor."

Quoted in *Graham*, from Hotchkiss v. Greenwood, 1850, 52 U.S. (11 How.) 248, 266, 13 L.Ed. 683.

We are of the opinion that Meisler's patent does not meet either test, whatever the difference, if any, between them may be. We agree that Meisler's method (claims 1–5, 8–9) is new in the Yakima Valley area as applied to hops, and that his particular container (claims 6 and 7) is also new as applied to hops. We agree that both are useful. But we cannot say, in the light of the prior art, that either is, in the words of the *Hotchkiss* condition, the product of "that degree of skill and ingenuity which constitute the essential elements of every invention." On the contrary, we think that "the improvement is the work of the skilful mechanic, not that of the inventor." To hold otherwise here would almost read the *Hotchkiss* condition out of the law.

Similarly, we are of the opinion that both the method and the container are such, in the light of the prior art, "that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." (35 U.S.C. § 103.) Making a cylindrical package out of an oblong one and putting it in a can can hardly be invention, or non-obvious, just because what is packed is hops, the package is large, and the cans are made by putting two barrels together.

Particularly applicable here are the views expressed by Mr. Justice Jackson in Great Atlantic & Pacific Tea Co. v. Supermarket Equip. Corp., 1950, 340 U. S. 147, 151–153, 71 S.Ct. 127, 130:

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549 [58 S.Ct. 662, 82 L.Ed. 1008]; 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' To the same end is Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, [59 S.Ct. 897, 83 L.Ed. 1334] and Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, [62 S.Ct. 37]. The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."

\* \* \* \* \* \*

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability."

See also Jeddeloh Brothers Sweed Mills, Inc. v. Coe Mfg. Co., supra, n. 7; Hensley Equip. Co., Inc. v. Esco Corp., supra, n. 7.

The patent is invalid. The second paragraph of the judgment is modified to read:

"It is ordered and adjudged that claims 1, 2, 6, 7, 8 and 9 of the patent in suit, No. 2,674,535 are invalid and that the action be dismissed on the merits and the defendant, John I. Haas, Inc., recover of the plaintiff its costs of action."

As so modified, the judgment is affirmed.