**BLACK & DECKER, INC. Black & Decker (U.S.), Inc. and CIC Int'l Corp., Plaintiffs–Appellants,**

v.

**HOOVER SERVICE CENTER, and The Hoover Company, Defendants–Appellees.**

No. 89–1287.

United States Court of Appeals, Federal Circuit.

Sept. 28, 1989.

Rehearing Denied Oct. 23, 1989.

**1286**

Don K. Harness, Harness, Dickey & Pierce, Birmingham, Mich., argued for plaintiffs-appellants. With him on the brief were John A. Artz and Gordon K. Harris, Jr. Also on the brief were Mark D. Gately and Daniel R. Lanier, Miles & Stockbridge, Baltimore, Md. and Edward D. Murphy, Black & Decker, Inc., Towson, Md., of counsel.

Ray L. Weber, Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, Ohio, argued for defendants-appellees. With him on the brief was Sylvia A. Petrosky.

Before MARKEY, Chief Judge, NEWMAN and ARCHER, Circuit Judges.

MARKEY, Chief Judge.

Black & Decker, Inc., Black & Decker (U.S.), Inc., and CIC Int'l Corp. (collectively B & D), appeal from a denial by the United States District Court for the District of Connecticut, Civil Action No. H-87-851, of preliminary injunctions against trademark and patent infringement allegedly being committed by Hoover Service Center and The Hoover Company (Hoover). We vacate and remand.

## BACKGROUND

On November 2, 1987, B & D sued Hoover, alleging that sales of Hoover's DUBL-DUTY hand-held vacuum product constituted infringement of U.S. Patent No. 4,309,-875 ('875), infringement and dilution of trademark rights, and unfair competition. On November 2, 1987, B & D moved to preliminarily enjoin all but patent infringement. On December 10 and 11, 1987, a hearing was held, but the judge then recused. The case was transferred to the Chief Judge, who recused herself, and then to the judge who rendered the ruling under review.

In early 1988, B & D amended its complaint, alleging infringement of U.S. Patent No. 4,542,557 ('557), in which inventor Levine disclosed and claimed a wet-dry vacuum and of which B & D had become a licensee, added as plaintiff its licensor, CIC Int'l Corp., and moved to preliminarily enjoin infringement of the '557 patent.

After a 7-day evidentiary hearing conducted in April and July, 1988, the court set September 9, 1988, as the deadline for post-hearing briefs. On November 3, 1988, Hoover filed a "Surreply" alleging antitrust violations. No decision having been rendered, B & D's counsel wrote the court on January 20, 1989. On January 27, 1989,

the court rendered its "Ruling On Motions For Preliminary Injunction" denying both motions.

## THE RULING

The court decided each motion on a single issue, having found absence of a trademark right and no patent infringement. Determining that B & D had not shown a likelihood of success, the court did not decide on irreparable harm, balance of hardships, or effect on the public interest.[1]

### (a) *Trademark Infringement*

The court determined that B & D could have no "proprietary right" in the shape of the bowl portion of its "DUSTBUSTER" hand-held vacuum[2] because the bowl was "functional." The court did not decide whether B & D had shown a likelihood of success on secondary meaning or likelihood of confusion. In finding "functionality" the court said:

> The court finds that in the instant case, the design of the DUSTBUSTER bowl is dictated essentially by its utility or purpose. In making this determination, we are guided in large part by the '875 patent, which plaintiffs describe as "deal[ing] with the internal mechanisms of the vacuum cleaner."

> The function of the wedge shaped bowl of the DUSTBUSTER is described in detail in column 5, 11, 37–46, and column 6, 11, 7–12, of the '875 patent: the wedging engagement between the ring 75 [of the filter bag assembly 73] and bowl 47 prevents the assembly 73 from inadvertently falling out of the bowl or from backing out when the power unit is separated from bowl unit 23 [sic 25]. Furthermore, when the power unit 23 and bowl unit 25 are assembled together, as shown in Fig. 2, the venturi 41 engages the ring 75 and presses it into snug wedging engagement with the bowl 47. As shown, the venturi has a radial shoul-

der 85 which engages a radial shoulder 87 on the ring 75.

> By providing that the filter bag assembly 73 remains in position in the bowl 47 when the power and bowl units 23, 25 are detached and separated, all of the dirt remains securely trapped in the dirt collecting chamber 80 in bowl 47 and cannot spill out until the filter bag assembly 73 is thereafter removed.

> It is clear from plaintiffs' own disclosure in the '875 patent that the wedge shape of the bowl functions to limit removal of the filter assembly upon disassembly of the power unit with the bowl but permits subsequent removal to empty the bowl. By preventing the filter unit from inadvertently falling out of the bowl when the power unit is separated from the bowl unit, debris cannot be accidentally spilled from the bowl. Further, the wedge shape of the bowl serves to frictionally lock the filter unit in place in contact with the venturi unit when the components are assembled.

> If these features are covered by the '875 patent, then the '875 patent should be the basis for seeking the requested monopoly and the public will have to wait until the patent has expired and the features are in the public domain to be copied. If not covered by the patent, since it is essential to the use of the vacuum, the wedge shaped bowl should be considered part of the public domain, free for anyone to copy.

Saying its conclusion (that B & D should look to the '875 patent for protection of its bowl shape) was "not based solely on the function of the DUSTBUSTER described in the '875 patent," the court said that conclusion was "buttressed" by testimony that: a wedge shape eases maneuverability into tight places; its flat bottom lends stability against rolling; a rectangular shape maximizes storage space and minimizes length; and a straight line shape reduces material and thus cost. The court concluded that a wedge shape bowl "not covered by an

---

1. Neither party moved for additional findings under Rule 52(b), Fed.R.Civ.P.

2. "DUSTBUSTER" is the subject of B & D's trademark registration No. 1,283,187.

unexpired utility patent" is functional and "appears to be the best way of accomplishing the objectives for which it was designed." [3] The court then held that, because the configurations of both parties' bowls "is dictated in many essential aspects by function," there is "simply no trademark right."

### (b) *Patent Infringement*
### (1) *Literal*

Without so labeling it, the court disposed of B & D's assertion of literal infringement in these paragraphs:

The Levine ['557] patent discloses that an air/fluid mixture enters the nozzle of the device under a vacuum produced by a blower or fan. The moisture-laden air then passes along a nozzle or snorkel and impinges against a deflector or diverter, whereupon fluid separates from the air and is directed toward the lowermost portion of a storage chamber or bowl. The remaining substantially fluid-free air in the bowl is then guided from the bowl to the motor housing which contains the blower and a motor for operating the blower and the discharger.

This air passageway or guide has an entry port formed as a protrusion or "snout" arranged to prevent entry of fluid in the bowl or storage chamber from passing to the vacuum filter in advance of the blower-motor housing when the vacuum is oriented in a variety of directions, including when the hand-held unit is tipped with its front or nozzle end pointed in an upward direction. The opening into the entry port is situated such that liquids in the storage chamber will not pass into the filter and blower and motor housing regardless of the orientation of the vacuum, but will be prevented from doing so by the wall of the snout which serves to shield the filter and the blower-motor housing.

The Hoover DUBL–DUTY wet/dry vac charged as an infringement and the prior art cited during the prosecution of the Levine patent, particularly the patent to Nauta, U.S. 4,142,270, does not contain the snout-like protrusion or front wall recited in claim 1 and the dependent claims of the Levine patent. It is obvious from an examination of the prosecution history of the Levine patent that allowance of the claims of the Levine patent was predicated on the addition of language to the claims defining the snout and its depending front wall, distinguishing the claimed invention from Nauta.

In the Hoover DUBL–DUTY vac, the air/fluid mixture enters a nozzle under a vacuum produced by a blower or fan. The moisture-laden air impinges against a deflector or diverter which is located not, as required by claim 1 of the Levine patent, at the "exit port of said nozzle" for the purpose of "directing suctioned liquid away from the entry port of the conduit" [or snout], but against a single curved surface which is the front of the filter housing of the DUBL–DUTY vac. An entry port at the top of the filter housing permits the passage of air to the filter element housing, upstream from a blower motor unit powering the vacuum for filtration and subsequent discharge, while liquid is accumulated in the bowl.

### (2) *Doctrine of Equivalents*

The court recited the standard set forth in *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1950), and disposed of B & D's assertion of infringement under the doctrine in this single paragraph:

**3.** The court's statement that the transparency of Hoover's bowl would be superior to a solid bowl with a window has no bearing on whether the shape of B & D's bowl is functional. Nor does B & D's argument that Hoover's design patent application showed the functionality defense to be an "afterthought."

The district court said "the record is void of what was intended to be covered," by Hoover's

design application. Hoover refused on discovery to disclose the subject matter of its application. Hoover's brief here contains the unsupported and improper testimony of counsel that the application is "on the entire product." Counsel does not say whether the application shows the bowl portion in the dotted lines applicable to unclaimed parts. *See Manual of Patent Examining Procedure* § 1503.02 (1988).

As explained above, the diverter in the Levine ['557] patent is positioned at the exit port for the purpose of diverting liquid away from the entry port, which is further shielded from liquid in the bowl by the front wall of the snout or entry port if the bowl is tilted. The DUBL–DUTY vac does not have structure to perform this function. Accordingly, the court finds that the doctrine of equivalents does not apply, particularly since Nauta (the prior art patent cited by the Patent and Trademark Office) accomplishes the result in substantially the same manner as the accused device.

## THIS APPEAL

Exhibiting a monumental lack of concern for the fair and efficient administration of the appellate process, the parties here have:

(1) Violated this court's Rule 30 by including in a 4,000 page appendix, without leave, portions of their post-hearing briefs, reply briefs, surreply briefs, and responses and appendices to post-hearing briefs.

(2) Effectively violated the 50 page limit of this court's Rule 28 by relying, without leave, on the additional 238 pages of such post-hearing submissions.

(3) Violated the rule against submission of evidence on appeal by adding to the record and relying in their briefs on post-hearing documents and events, nowhere identifying them as never having been presented to the district court.[4]

(4) Mischaracterized the evidence (Hoover more often and more egregiously), citing testimony that does not support or that directly contradicts their self-serving descriptions of that testimony.

(5) Asked us to decide a plethora of factual and legal issues not reached or decided by the district court. B & D says we should decide: irreparable harm, balance of hardships, effect on the public interest; secondary meaning; likelihood of confusion; and validity of the '557 patent. Hoover says we should find B & D wrong on those issues, but we should, in any event, decide for it on charges never presented at the hearing: violation of antitrust laws; inequitable conduct in procuring (post-hearing) a reissue of the '557 patent; and patent misuse.[5]

For this court to decide the parties' unadjudicated and never-presented issues would be unfair to the district court, the parties, and the judicial process. We can hardly hold, for example, that the district court did or did not err in resolving issues it did not resolve and those it had no opportunity to resolve.

B & D quotes language from two opinions in which the Ninth Circuit[6] and the Supreme Court[7] appear to have authorized

4. For example, B & D included in the appendix copies of its trademark registration No. 1,536,-189 on the configuration of its particular wedge-shaped bowl and its trademark registration No. 1,504,619 on the overall configuration of its cleaner, including the wedge-shape bowl. Though both registrations issued *after* the hearing, B & D's brief implies that they were before the district court.

5. Though informed by two trial judges that it could not rely on a judgment in an earlier case because that judgment was vacated, Hoover lists the case four times in its brief here *without once indicating that the judgment had been vacated.* B & D, while admitting that the trademark right upheld in another case was the configuration of its entire product, improperly asks us to decide *de novo* that its bowl is the dominant portion and to hold the district court in error for not giving that earlier judgment "considerable weight."

6. *M.O.S. Corp. v. John I. Haas Co., Inc.,* 375 F.2d 614, 153 USPQ 153 (9th Cir.1967). B & D's citation is surprising. The case holds that an appellate court can decide only when the record makes *invalidity* clear. The citation also flies in the face of this court's holdings. *See Vieau v. Japax,* 823 F.2d 1510, 1517, 3 USPQ2d 1094, 1100 (Fed.Cir.1987).

7. *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986). In the quote in its brief, for reasons best known to itself, B & D substituted ellipses for "now before us, and with the intervening decisions in *Akron [Center for Reproductive Health, Inc. v. City of Akron,* 651 F.2d 1198 (6th Cir.1981) ], [*Planned Parenthood Assn. of Kansas City v.*] *Ashcroft* [655 F.2d 848 (8th Cir.1981) ], and *Simopoulos* [*v. Commonwealth,* 221 Va. 1059, 277 S.E.2d 194 (1981) ] at hand,". *Id.* at 757, 106 S.Ct. at 2177.

an appellate decision on an unadjudicated issue. Both, however, recognized the procedure as aberrational and limited it to a single issue on which the answer was clear (in the former, clear patent invalidity; in the latter, a constitutional issue recently thrice decided by the Supreme Court). This court has held that it may decide a legal issue "when the pertinent facts are undisputed." *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.,* 859 F.2d 878, 891, 8 USPQ2d 1468, 1479 (Fed. Cir.1988). However, every pertinent fact on every unadjudicated issue is here disputed, and nowhere in the books is there an instance in which an appellate court has engaged in anything remotely like the wholesale first-instance fact finding the parties here seek. It is to be hoped that no appellate court will in future be so importuned. As this court has repeatedly stated, *see Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1570, 7 USPQ2d 1606, 1608 (Fed.Cir.1988); *Underwater Devices, Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1388, 219 USPQ 569, 575 (Fed.Cir.1983), it will not cooperate in counsel's distortion of the appellate process.[8]

### Issues

1. Did the district court abuse its discretion in denying a preliminary injunction against trademark infringement?

2. Did the district court abuse its discretion in denying a preliminary injunction against patent infringement?

## OPINION

### General

The grant or denial of a preliminary injunction is reviewed under an abuse of discretion standard. Findings are subject to the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P. Conclusions are reviewed *de novo.* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2962 (1973).

Preliminary injunctive relief has been rightly described as an extraordinary remedy not to be routinely granted. *Medical Soc'y of N.Y. v. Toia,* 560 F.2d 535, 538 (2d Cir.1977). Recognizing its equitable nature and the consequent need for balancing the equities, however, this court has stated:

> One denied a preliminary injunction must meet the heavy burden of showing that the district court abused its discretion, committed an error of law, or seriously misjudged the evidence. The district court's discretion is not absolute, however, and must be measured against the standards governing the issuance of injunctions. Where a case for a temporary injunction is clearly made out, it is not open to the trial court to deny the remedy.

*Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed. Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687, 220 USPQ 385 (1983) (citations omitted).

### (1) Trademark Infringement

■ The district court *sua sponte* relied on the '875 patent (not offered in evidence) to guide "in large part" its determination that B & D's bowl shape "is dictated essentially by its utility." That reliance was a clear error of law, not only because the '875 patent was absent from the evidence but also because the court misinterpreted the patent. Focusing on the phrase "wedging engagement," the court did not recognize that the patent was thereby describing the engagement of a small knob on the inner edge of the large open end of the bowl. The court then erroneously attributed the mechanical functions of that internal knob (connection of bowl to power unit; retention of filter assembly; prevention of debris spilling; locking filter unit in place) to the external shape of the entire bowl. Obviously, as shown and described in the '875 patent, those functions are performed by an *internal* element that clearly

---

**8.** Had the parties moved for leave to include their post-hearing submissions in the appendix, we would have denied the motion, cautioned counsel to limit the appeal to the judgment appealed from, and spared the parties substantial costs and attorney fees.

has absolutely nothing whatever to do with the bowl's *external shape.*[9]

Because the '875 patent relates in no manner to any bowl shape, there is no way in law that B & D could, as the district court thought, use that patent as "the basis for seeking the requested monopoly" of its bowl shape. The court's reference to "function of the DUSTBUSTER described in the '875 patent" reflects confusion between "de jure" and "de facto" functionality. *See In re Morton–Norwich Prods., Inc.*, 671 F.2d 1332, 213 USPQ 9 (CCPA 1982) (cited and followed by the Second Circuit in *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76, 225 USPQ 654, 657 (2d Cir.1985) and *Stormy Clime Ltd. v. Pro Group, Inc.*, 809 F.2d 971, 977, 1 USPQ2d 2026, 2030–31 (2d Cir.1987)).

Our difficulty with the court's reference to testimony on maneuverability, stability, storage space, length, and reduced cost is threefold: (1) it is so intertwined and bracketed with the erroneous reliance on the '875 patent (which this testimony "buttressed"; a wedge shape bowl "not covered by an unexpired utility patent") as to obfuscate the basis for the court's decision; (2) it is applicable to many of the wedge shaped bowls in evidence; and (3) it is silent on whether Hoover could compete efficiently and effectively by using any of the many different, admittedly non-infringing, wedge shaped bowls in evidence.

The Court of Appeals for the Second Circuit, whose law we apply to a denial of an injunction against trademark infringement in that Circuit, has stated that the accused infringer bears the burden of establishing the functionality defense, a defense created to insure its right to compete effectively by adopting the configuration claimed as a trademark. *Stormy Clime Ltd.*, 809 F.2d at 977, 1 USPQ2d at 2030;

*LeSportsac*, 754 F.2d at 77, 225 USPQ at 658. Thus the defense arises out of public policy and only after plaintiff has shown a basis for claiming a trademark right in the configuration. When upheld, the defense turns the balance against the risk of consumer confusion and in favor of competition by permitting others to use the configuration when, because of its functionality, they must do so to compete efficiently and thus effectively. That result has been stated as "[f]unctional features cannot be trademarks." *See* J. McCarthy, *Trademarks and Unfair Competition.* § 7:26 (2d ed. 1984).

■ Proof that a configuration of goods is functional in the legal sense is a complete defense to establishment of a trademark right that a plaintiff would otherwise have in that configuration. For that reason, the Second Circuit said in *Stormy Clime*, 809 F.2d at 974, 1 USPQ2d at 2028, that its district courts should *first* decide on secondary meaning and likelihood of confusion, i.e., on whether the plaintiff has established a prima-facie case of likelihood of consumer confusion against which the functionality defense must then be balanced. B & D submitted evidence of secondary meaning and likelihood of confusion (sales of 30,000,000 of its particular bowl shape for $690,000,000; $38,000,000 spent on advertising; media recognition; and survey evidence of public recognition of its particular bowl shape as an indication of source).[10] As above indicated, the district court did not decide whether there is a likelihood of consumer confusion, and if so, whether it must be disregarded because of Hoover's need to use B & D's particular wedge-shaped bowl to compete effectively.

If Hoover could compete effectively by using any of the non-infringing wedge

---

9. The court's quote from the '875 patent consists of three sentences lifted out of one paragraph and one out of another. Like the rest of the patent, neither paragraph says anything about a bowl shape.

 Incredibly, Hoover's brief argues in support of the district court's use of the '875 patent. Candor would suggest Hoover's adherence to its presumed original evaluation of the '875 patent as inappropriate for submission in evidence.

10. The district court may have been misled by B & D's argument, repeated on appeal, that its secondary meaning/likelihood of confusion evidence is proof of non-functionality. B & D thereby seeks to establish a legal non-sequitur, i.e., that a configuration cannot be functional if it identifies source and its use by more than one competitor would lead to consumer confusion. *See In re Deister Concentrator Co.*, 289 F.2d 496, 504, 129 USPQ 314, 321–22 (CCPA 1961).

shaped bowls, that fact would tend to undermine its functionality defense. *LeSportsac*, 754 F.2d at 76, 225 USPQ at 657.[11] If consumer confusion can be avoided, while still effectively competing, that fact would weigh heavily in the balance. Hoover, which bore the burden, does not argue, and the court did not find, that it could not compete effectively unless it used its present bowl shape. The court made no reference whatever to Hoover's ability to compete. Nor did it make a finding on whether Hoover's bowl might avoid consumer confusion because of any difference in shape or material or labeling.

The district court did say that "according to the testimony" anything other than a wedge shape would add material and thus cost, citing the reference in *Morton–Norwich*, 671 F.2d at 1341, 213 USPQ at 16, to designs that result from inexpensive manufacturing methods and the reference in *Warner Bros., Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 331 (2d Cir.1983) to reduced costs, but, again, B & D is claiming as its trademark a particular wedge shaped bowl, not any and every wedge shaped bowl. The court's silence on the non-infringing wedge shaped bowls was a non-judging the equal of a serious misjudging of the evidence that constitutes an abuse of discretion. *Smith Int'l.*, 718 F.2d at 1579, 219 USPQ at 691.

■ The district court's consideration of the evidence is thus simply too incomplete for adequate review of its denial of the motion. *See Pretty Punch Shoppettes, Inc. v. Hank*, 844 F.2d 782, 785, 6 USPQ2d 1563, 1565 (Fed.Cir.1988) (vacating denial of preliminary injunction because findings insufficient to permit meaningful review).

It remains for the district court to decide whether B & D is likely to succeed in establishing that its particular bowl shape has acquired a secondary meaning and that Hoover's continued use of its bowl configuration would be likely to lead to consumer confusion. If those inquiries be answered affirmatively, the court must then determine whether Hoover so needs to use its configuration to compete effectively as to weigh the balance in favor of a consequent continuance of that consumer confusion. In sum, it remains for the district court to determine whether it will find "irreparable injury and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor," *LeSportsac*, 754 F.2d at 74, 225 USPQ at 656. We do not, therefore, either reverse the denial of the motion or order a grant thereof.

Because the basis for it cannot stand, the present order denying the motion for preliminary injunction against trademark infringement constituted an abuse of discretion and must be vacated, and the case must be remanded. *See Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1577, 10 USPQ2d 1296, 1299 (Fed.Cir.1989) (remand appropriate when all factors for preliminary relief have not been fully considered).

### (2) Patent Infringement

#### In General

At the hearing, the dispute on patent infringement centered on these structures:

---

**11.** Hoover's brief dismisses the non-infringing wedge shaped bowls used on "dry-vacs" because its product is a "wet-dry vac," in disregard of the rule that a configuration-of-goods trademark resides in *configuration* or external shape, not in internal mechanisms or structures. Similarly, Hoover dismisses the non-infringing wedge shaped bowls used on wet-dry vacs because its product is mechanically "the best," again obfuscating the role of configuration.

'557 Patent Hoover's DUBL-DUTY

The drawing on the left is the relevant portion of Figure 11 of the '557 patent. That on the right is the relevant portion of Hoover's product as illustrated in Attachment G to Hoover's brief. In each, the structure probative on the question of infringement has been darkened for clarity and ease of explication. The independent claim in suit set forth the probative structure on the left in these terms:

> an intake nozzle ... a diverter positioned at said exit port of said nozzle ... a front wall and a snout extending forward of said front wall into said storage chamber, said snout preventing the entry of the liquid into said inlet chamber when said cleaner is oriented with said horizontal orientation.

### (a) Literal Infringement

■ The district court found that Hoover's cleaner "does not contain the snout-like protrusion or front wall recited in claim 1." That finding was not clearly erroneous. The limitation in the claim to a "front wall and a snout extending forward of said front wall" does not "read on" Hoover's cleaner. There therefore can be no literal infringement.

The court's references to Nauta, prosecution history, and operation of the accused device were unnecessary in this case to the literal infringement inquiry. Those references do not, however, detract from the correctness of the finding that the quoted limitation cannot be read on Hoover's cleaner.[12]

B & D devoted days of testimony to a foredoomed effort to read the claim on Hoover's cleaner, finding it necessary, *inter alia*, to call a flange unnumbered in the patent the "front wall" of the claim, though the specification assigns the numeral 284 to what is shown and described as a front wall entirely distinct from the flange. Presenting the same literal infringement arguments on appeal, B & D's brief employs, schizophrenically, the language of equivalency (e.g., "the *operation* and *internal* structure of the DUBL-DUTY hand vac are remarkably similar to the Levine '557 patent"; "a purpose, way and result substantially identical to that of the claimed '557 invention"; "the snout/diverter of the DUBL-DUTY hand vac performed in the *same* manner to achieve the *same* result" (emphasis B & D's)). B & D closes its argument by quoting the district court's remarks from the bench, which remarks would be more applicable to a doctrine of equivalents inquiry:

> I think the drawings in both cases whether you're talking about Levine or whether you're talking about Hoover do exactly what the claim says it's supposed to do. You're going to have a tough time persuading me that it doesn't.

The district court correctly found that B & D had not shown a likelihood of success in establishing literal infringement.

### (b) Infringement Under the Doctrine of Equivalents

■ The district court's finding that there is no likelihood of establishing in-

---

12. B & D argues that the limitation "a diverter positioned at said exit port of said nozzle" can be read on Hoover's cleaner and that the court erred in effectively requiring that the diverter be connected to the nozzle. The argument is correct but unavailing, one claim limitation having been found unreadable on the accused device.

fringement under the doctrine of equivalents is clearly erroneous. It is based on two clearly erroneous (and partially contradictory) subsidiary findings: (1) that the DUBL–DUTY does not have structure to obtain the result of shielding liquid from the inlet chamber when the bowl is tilted; and (2) that the DUBL–DUTY does obtain that result but in substantially the same way Nauta (U.S. Patent No. 4,142,270) does.

B & D has shown that finding (1) is clearly erroneous and Hoover makes no attempt to counter or refute that showing. Nor could it. Its witnesses repeatedly testified that the DUBL–DUTY is operable in the horizontal or any tilted position and a mere glance at its internal arrangement as above shown confirms that it has structure that obtains the result of shielding liquid from the inlet chamber when the bowl is tilted.

Similarly, B & D has shown that finding (2) is clearly erroneous and Hoover makes no attempt to counter or refute that showing. On the contrary, Hoover's three and one-half page argument on equivalency is devoted only to the admitted fact that the claim was allowed after being amended [13] and to literal infringement arguments, including the assertion that the amendment "bar[s] Black & Decker from *reading the Levine claims on* the Hoover structure" (emphasis ours).

All of the pertinent facts are undisputed. *See Smithkline*, 859 F.2d at 891, 8 USPQ2d at 1479. The prior art, the claim, the prosecution history, and the accused structure speak clearly and are unchallenged before us as they were before the district court. The court's finding having been shown to be clearly erroneous, B & D has met its burden and should not be forced to again show a likelihood of success on its claim of infringement under the doctrine. There were ·and are no probative facts left to be found by the district court on that question. There is therefore neither need nor warrant for burdening the parties and the district court with a remand to again decide whether B & D has on this record shown such a likelihood of success.

 There can be and is no viable dispute on the Nauta structure and its operation. Nauta discloses a drum designed, intended for use, and useable only in a single, upright position with its bottom resting on a horizontal surface. Nauta neither discloses nor suggests a hand-held device to be used, carried or stored in a variety of orientations. A horizontal wall divides Nauta's drum into upper and lower chambers. A motor and fan are in the upper chamber. An open mesh cylindrical screen extends into the lower chamber from an opening in the horizontal wall. A tubular inlet extends outwardly from the wall of the lower chamber to receive an air/liquid mixture and direct it upwardly against the horizontal wall. A disc is free to float vertically within the cylindrical screen. As the lower chamber fills with liquid the disc floats upwardly until it closes the opening in the horizontal wall, thus preventing entry of liquid into the upper chamber. Because the disc also closes off the passage of air, the entire device is rendered inoperative.

It is indisputable that the Nauta structure would be inoperative in a horizontal orientation, for the rising liquid would then not cause the disc to float toward the opening and liquid would pass through the opening into the motor and fan chamber. Thus the amendment related not only to the front wall and snout, but, as the amendment stated, to the *function* of those elements (preventing entry of liquid to the inlet chamber when the cleaner is horizontal) and to the examiner's notation of the need to "correlate structure with orientation." The function of preventing liquid entry when horizontal is neither performable nor performed at all in Nauta. Contrary to the district court's clearly erroneous finding (2), Nauta's manner or way of accomplishing the result of shielding the upper chamber (floating a disc upwardly to

---

**13.** The amendment constituted the incorporation of then claim 15 into then claim 14. The examiner had already indicated that claim 15 contained subject matter allowable over Nauta, expressly noting that the amendment would "correlate structure with orientation."

close an opening) is entirely distinct from the positioning of fixed parts in the claimed invention and in Hoover's DUBL–DUTY.

■ Under the doctrine of prosecution history estoppel, claim amendments and arguments may preclude a patentee from recapturing what was foregone during prosecution of the patent application. *Advance Transformer Co. v. Levinson,* 837 F.2d 1081, 1083, 5 USPQ2d 1600, 1602 (Fed.Cir. 1988). Similarly, the range of equivalents to which a claimed invention is entitled may never be so great as to encompass a structure in the prior art. *Stewart–Warner Corp. v. Pontiac, Michigan,* 767 F.2d 1563, 1572, 226 USPQ 676, 682 (Fed.Cir.1985). The doctrines of prosecution history estoppel and equivalents are equitable in nature, requiring courts to engage in a balancing analysis "guided by equitable and public policy principles underlying the doctrines involved and by the facts of the particular case." *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 871 n. 7, 228 USPQ 90, 96 n. 7 (Fed.Cir.1985). Hence this court has held that the mere fact of amendment does not necessarily preclude application of the latter doctrine, pointing out that an amendment may result in a limiting effect on the range of equivalents "within a spectrum ranging from great to small to zero." *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1363, 219 USPQ 473, 481 (Fed. Cir.1983). Nothing here of record requires that the claimed invention be limited to a range of equivalents insufficient to encompass the DUBL–DUTY structure.

In what appears to have been an effort to apply prosecution history estoppel, the district court had only this to say:

In sum, since the Hoover DUBL–DUTY vac does not include a spout [sic, snout] defining an entrance port, the spout having a front wall to preclude liquid from going through the entry port when the hand-held vacuum is tilted, and these elements were added to the text of the main claim of the Levine patent in order to overcome rejection of the claim over the Nauta patent, this court can only con-

clude that the Levine patent is not infringed if we are to afford it a presumption of validity.[14]

The amendment cited by the court would be fatal to a range of equivalents that would encompass Nauta or a similar device that shielded an inlet chamber with a floating closure; it would not be "fatal to application of the doctrine itself." *Id.; La-Bounty Mfg., Inc. v. ITC & Dudley Shearing,* 867 F.2d 1572, 1576, 9 USPQ2d 1995, 1998–99 (Fed.Cir.1989). Considering that virtually every patent application is amended, acceptance of the court's statement as a proper application of prosecution history would read the doctrine of equivalents out of the law. That doctrine comes into play only after literal infringement is found lacking. It was designed to do justice to a patentee when an infringer has in fact appropriated the invention with a structure that is substantially equivalent in function, way, and result, to that claimed.

Hoover's air-liquid separation apparatus is obviously merely an insubstantially altered form of that set forth in the claim, and every claimed element or its equivalent is present in Hoover's cleaner. *See Pennwalt Corp. v. Durand–Wayland Inc.,* 833 F.2d 931, 935, 4 USPQ2d 1737, 1740 (Fed. Cir.1987), *cert. denied,* —— U.S. —— and ——, 108 S.Ct. 1226 and 1474, 99 L.Ed.2d 426 and 703 (1988). It neither is nor can be intelligibly disputed that Hoover's slightly relocated diverter performs precisely the function of the claimed diverter in directing the incoming liquid down and allowing liquid-free air to move up. It neither is nor can be intelligibly disputed that Hoover's air inlet to its filter and inlet chamber is located above the nozzle and storage chamber to shield the air inlet from liquid when the device is in horizontal position, precisely the location and function of the claimed snout. It neither is nor can be intelligibly disputed that Hoover's filter housing wall functions precisely as does the claimed front wall in preventing entry of liquid into the inlet chamber.[15]

---

**14.** Patents are afforded a presumption of validity by statute. 35 U.S.C. § 282 (1982).

**15.** Hoover's chief engineer and witness DeGraf correctly described the structure and operation

Because the district court's determination that B & D had not shown a likelihood of success on its claim of infringement under the doctrine of equivalents was based on clearly erroneous findings, it constituted an abuse of discretion and cannot stand.

Again, however, we do not order a grant of B & D's motion for preliminary injunction against patent infringement but vacate the order denying the motion and remand in light of the determinations (likelihood of success on validity, irreparable harm, balance of hardship, public interest) yet to be made, and properly only to be made in the first instance, by the district court. *See Epic Metals*, 870 F.2d at 1577, 10 USPQ2d at 1299.

## CONCLUSION

Reluctance accompanies remand; yet the district court's election not to decide all involved factors compels that result here. The order denying the motions for preliminary injunctions against trademark and patent infringement is vacated and the case is remanded for further proceedings in light of this opinion.[16]

## COSTS

Each party will pay its own costs.

VACATED AND REMANDED.

---

of the DUBL–DUTY just as they are described here, in the December, 1987 hearings, i.e., *before* Hoover was charged with infringement of the '557 patent.

**16.** Decisions on preliminary relief do not preclude trial on the merits, 11 C. Wright & A.

Miller, *Federal Practice and Procedure* § 2962 (1973), though preclusion may be appropriate when the evidence is the same, 18 C. Wright & A. Miller, *Federal Practice and Procedure* § 4445 (1981).