BISSELL, Circuit Judge.
 

 John J. Kirlin, Inc. (Kirlin) appeals from the judgment of the United States Claims Court, 11 Cl.Ct. 199 (1986), entered pursuant to the court’s order granting the motion of the United States for summary judgment on Kirlin’s claim for compensation under the Value Engineering Incentive (VEI) clause of its contract to renovate the heating and cooling control system at the Pentagon. We affirm.
 

 BACKGROUND
 

 On April 14, 1977, the General Services Administration (GSA) entered into a contract with Kidde Consultants, Inc. (Kidde) for a preliminary engineering study of renovations of mechanical, electrical, and fire protection systems at the Pentagon building in Arlington, Virginia. As part of its analysis of renovations to the heating, ventilation, and air conditioning (HVAC) sys-terns, Kidde recommended “ ‘[t]he complete removal of the existing automatic temperature control system relating to control of the 56 major air handling units, and replacement with a new control system including dampers and control air supply system.’ ” 11 Cl.Ct. at 200. The air handling system contained two types of outside air dampers known as minimum outside air dampers and maximum outside air dampers. Kidde recommended the replacement of both types of dampers.
 

 On August 31, 1978, GSA entered into a contract with Kirlin to perform part of the HVAC renovation work that was previously recommended by Kidde. The pertinent portion of the contract required Kirlin to replace the HVAC system’s heating and cooling coils, and the automatic system controls, including motors controlling the outside air dampers. It required the modification of some of the minimum outside air dampers, but did not require the modification of maximum outside air dampers or the replacement of any outside air dampers.
 

 Pursuant to the standard VEI clause of the contract,
 
 *
 
 Kirlin submitted a Value Engineering Change Proposal (VECP) on September 21, 1978. The proposal noted that the outside air dampers were in poor condition and that the HVAC system would operate more efficiently if the dampers were replaced. Kirlin also submitted data to support its estimate of the energy cost savings to the government by implementing the proposal. GSA sent the proposal to Kidde for review. Kidde concluded that, while replacing the dampers might effect a significant reduction in maintenance costs, the reduction in energy costs would not justify the replacement costs. GSA rejected the proposal because replacing the dampers would have resulted in only marginal energy cost savings.
 

 
 *1540
 
 Although GSA had rejected Kirlin’s VECP, Kirlin and its control system subcontractor continued, through the latter part of 1978 and early 1979, to recommend replacement of the dampers as essential to the proper operation of the control system. The construction engineer responded to one of Kirlin’s letters on February 16, 1979. He stated that he was aware that some of the dampers required repair and that they would not close properly, but that the condition of the dampers did not prevent Kirlin from installing the control system. Furthermore, the construction engineer indicated that “ ‘[i]t is not possible for a change order to be issued under this contract to install new direct air dampers. Any repairs or replacement of the existing dampers must be accomplished by Government forces or a separate contract.’ ” 11 Cl.Ct. at 201.
 

 After Kirlin completed its contract, GSA decided to replace the outside air dampers “to avert possible freeze-up of newly installed heating and cooling coils and also to conserve energy.” GSA issued an invitation to bid on the project on July 20, 1981.
 

 When Kirlin learned of the contract to replace the dampers, it submitted a claim to the contracting officer under its contract for HVAC renovations. Kirlin maintained that by awarding a contract to replace the dampers GSA had constructively accepted Kirlin’s VECP. Kirlin claimed that it was entitled to $323,456.00, which was Kirlin’s estimate of twenty percent of the average annual energy cost savings resulting from the work. The contracting officer issued a decision denying the claim on the ground that Kirlin’s proposal was “not initiated by the Contractor” as required by Paragraph 1 of the VEI clause, since Kidde had proposed replacement of the outside air dampers before Kirlin. Kirlin filed a direct access action on the claim in the Claims Court pursuant to the Contract Disputes Act of 1978. 41 U.S.C. § 609(a)(1) (1982).
 

 Before the Claims Court, the government moved for summary judgment on the basis that Kirlin’s proposal did not qualify as a VECP because it: (1) was not a variation of existing requirements of the contract, (2) was not initiated and developed by Kirlin, and (3) was barred by a release executed by Kirlin on completion of the contract. The Claims Court held that “[a] value engineering change proposal must deal with a duty of the contractor imposed by the contract, not a matter which is so far removed from the scope of the work that it could not be reached by a change order under the changes clause of the contract.” 11 Cl.Ct. at 202 (citations omitted). Because of its conclusion on this point, the court did not consider whether Kirlin had initiated and developed the proposal, or whether the suit was barred by a release. On appeal, Kirlin argues that the Claims Court erred by: (1) deciding the case on a different basis than the one relied upon by the contracting officer, (2) interpreting the phrase “changing any requirement of this contract” too narrowly, and (3) concluding that the proposed change was not for the purpose of correcting a design deficiency of the contractor’s work.
 

 ISSUE
 

 Did the trial court err by concluding that a contractor, which submitted a VECP that was rejected by the contracting officer, was not entitled to compensation when the government subsequently entered into a separate contract covering the suggested work?
 

 OPINION
 

 The Claims Court’s opinion in this case focused on whether the change suggested by Kirlin was “ ‘for the purpose of changing any requirement of th[e] contract.’ ” 11 Cl.Ct. at 202. Although a VECP may change a requirement of a contract by either deleting or adding work, we agree that if the proposed change is so substantial that it constitutes a cardinal change it is beyond the scope of the VEI clause. However, we need not, and do not, decide whether the proposed replacement
 
 *1541
 
 of the outside air dampers was, under the circumstances of this case, a substantial deviation from the scope of the work that would have changed the nature of the bargain between the parties.
 
 See Air-A-Plane, Corp. v. United States,
 
 408 F.2d 1030, 1033, 187 Ct.Cl. 269 (1969).
 

 Kirlin is not entitled to compensation in this case because its proposal was not accepted. The record is clear that GSA expressly rejected the proposal. Nothing in the record indicates that the contracting officer rejected the proposal in bad faith. Nevertheless, Kirlin argues that, despite the initial rejection, GSA’s subsequent contract to replace the dampers constituted constructive acceptance of Kirlin’s proposal. We disagree.
 

 Numerous cases by the boards of contract appeals have held that constructive acceptance of a VECP occurs when the government, after rejecting a VECP, later implements substantially identical changes in the
 
 same
 
 contract.
 
 E.g. SCM Corp.,
 
 ASBCA Nos. 26544, 26786, 26788, 26790, 26791, 26792, 85-1 BCA (CCH) ¶ 17,783, 88,812;
 
 North American Rockwell Corp.,
 
 ASBCA No. 14485, 71-1 BCA (CCH) ¶ 8773, 40,737. We are aware of no case in which a contractor whose proposal was rejected in one contract has been awarded compensation based on the use of a similar idea in a subsequent contract to which he was not a party. The doctrine of constructive acceptance is not so far-reaching. Generally, the contractor’s right to compensation for a VECP depends on the existence of a contractual relationship with the government and on the existence of a VEI clause as a term of the contract.
 
 E.g., Grismac Corp. v. United States,
 
 556 F.2d 494, 214 Ct.Cl. 39 (1977). When the contract is completed, the contractual relationship ends, and there is no basis for constructive acceptance of a VECP. While at least one board of contract appeals has held that a contractor not in privity with the government may recover for a VECP under an implied contract theory,
 
 see Alan Scott Industries,
 
 ASBCA No. 24729, 82-1 BCA (CCH) ¶ 15,494, 76,860, Kirlin has not shown facts sufficient for an implied contract in this case. Consequently, Kirlin has no contractual basis for its claim.
 

 Nor are we persuaded that Kirlin’s VECP conferred upon it any proprietary rights in the proposal. We base our conclusion on the language of the VEI clause as it has been applied by the boards and the Court of Claims. Paragraph 1.2 of the clause provides that “[a] VECP identical to one submitted under any other contract with the Contractor or another Contractor may also be submitted under this contract.” Thus, a contractor need not base his proposal on a novel or original idea in order for it to be acceptable. Although, under the version of the VEI clause at issue in this case, the contractor must initiate and develop the proposal, it is no bar to acceptability of the proposal if the idea was previously conceived by the government or another contractor.
 
 See, e.g., B.F. Goodrich Co. v. United States,
 
 398 F.2d 843, 847, 185 Ct.Cl. 14, (1968);
 
 Syro Steel Co.,
 
 ASBCA No. 12530, 69-2 BCA (CCH) ¶ 8046, 37,363. Likewise, the first contractor to propose a change based on a particular idea acquires no proprietary rights in the proposal that would allow him priority over a subsequent proposal based on the same idea.
 
 See McClain Int'l, Inc.,
 
 ASBCA No. 23132, 80-1 BCA (CCH) 14,365, 70,814.
 

 We have considered Kirlin’s remaining arguments and found them to be without merit. For the foregoing reasons, we affirm the judgment of the Claims Court.
 

 AFFIRMED.
 

 *
 

 The initial paragraph of the clause provides:
 

 1. INTENT AND OBJECTIVES — This clause applies to any cost reduction proposal (hereinafter referred to as a Value Engineering Change Proposal or VECP) initiated and developed by the Contractor for the purpose of changing any requirement of this contract. This clause does not, however, apply to any such proposal unless it is identified by the Contractor, at the time of its submission to the Government, as a proposal submitted pursuant to this clause.