**SMS DATA PRODUCTS GROUP, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

Federal Data Corporation, Intervenor.

Nos. 89–1504, 89–1505.

United States Court of Appeals,
Federal Circuit.

April 11, 1990.

Forrest A. Hainline, III, Hainline & Williams, Washington, D.C., for appellant.

Mark H. Duesenberg, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were David Weiskopf and Marilyn J. Holmes, Office of the Gen. Counsel, Administrative Office of the U.S. Courts, of counsel.

Daniel S. Koch, Kurz Koch & Doland, Washington, D.C., for intervenor. With him on the brief was Marvin S. Haber, Gen. Counsel, Ann B. Axelrod, Federal Data Corp., Bethesda, Md., of counsel.

Before MARKEY, Chief Judge, and RICH, and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

SMS Data Products Group, Inc. (SMS) appeals the decisions of the General Services Administration Board of Contract Appeals (Board), denying SMS' two protests of the award of a contract by the Administrative Office of the United States Courts (AO) to Federal Data Corporation (FDC) for the provision of microcomputer hardware, software, and support services. *SMS Data Prods. Group, Inc. v. Administrative Office of U.S. Courts*, GSBCA No. 9834-P, 89-1 BCA ¶ 21,567 (protest one); *SMS Data Prods. Group, Inc. v. Administrative Office of U.S. Courts*, GSBCA No. 9894-P, slip op. (Feb. 9, 1989) (protest two). We affirm.

## BACKGROUND

A full statement of the facts of this case is contained in the Board's decision reported at 89-1 BCA ¶ 21,567, at 108,610-13. Presented here is a summary of only the facts relevant to this decision.

### The Solicitation

The AO issued a solicitation requesting proposals to provide microcomputer hardware, software, and support services to the federal judiciary for one year with annual extensions at the option of the AO, for a total duration of 108 months. Seven offerors submitted proposals and each proposal was evaluated on the basis of cost, user demonstration, support, system capabilities, and corporate experience/contract management. The AO evaluated the best and final offers and determined that FDC had the highest overall score. FDC was thereafter awarded the contract.

SMS filed two protests of the award. In the first protest SMS alleged FDC's proposal was mathematically and materially imbalanced and therefore the award was in violation of the solicitation and federal regulation. The Board denied this protest, finding no mathematical or material imbalance, and no consequent violation of the solicitation or federal regulation. In its second protest SMS alleged the AO engaged in improper conduct in evaluating SMS' and FDC's offers and in ultimately awarding the contract to FDC. The Board dismissed this protest as "frivolous" because SMS was "unable to demonstrate ... a credible factual predicate for this [second] protest." *SMS Data*, GSBCA No. 9894-P, slip op. at 3.

SMS filed appeals of both decisions and the two appeals were consolidated by Order of this court. Order, *SMS Data*, Nos. 89-1504,-1505 (Fed.Cir. Sept. 20, 1989). Five days prior to the Order, SMS filed its initial brief, referencing only the first protest. The AO and FDC, however, discussed the merits of each protest in their respective briefs, as is prudent in a consolidated appeal. During oral argument SMS stated it was abandoning an appeal of the second protest.

### FDC'S Proposal

FDC's prices for hardware and software are highest in the first contract year, then

decrease for each of the next four option years. They then increase slightly in option years six through nine. FDC's maintenance and training prices increase annually through year three, decrease until year seven, and then remain constant through year nine.

The AO evaluated prices over the nine potential contract years and determined that the cost to the government of purchasing from FDC becomes the lowest, relative to the other offerors, in option year four. *SMS Data*, 89-1 BCA ¶ 21,567, at 108,611 (Finding of Fact 10). The Board found that the AO anticipates exercising all of its options under the contract. *Id.* (Finding of Fact 11). The Board found that FDC's proposal does not contain any separate charges nor does it, in comparison to the other proposals, contain any implicit charges for the AO's failure to exercise options. *Id.* (Finding of Fact 7).

## ISSUE PRESENTED

Whether FDC's offer is imbalanced so that acceptance of the bid is prohibited by Solicitation Provision M.2.5 and 41 C.F.R. § 201-32.205-3(g)(3)(d) (1989).

## OPINION

■ The standard by which we review decisions of the Board is set by statute. The Board's findings of fact are final unless "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (1982). Conclusions of law are reviewed de novo, however, and some deference is given to the Board's expertise in interpreting contract regulations. This court has stated that "legal interpretations by tribunals having expertise are helpful to us, even if not compelling." *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984).

## I.

In the proceedings before the Board, the AO conceded FDC's bid is *mathematically* imbalanced. *SMS Data*, 89-1 BCA ¶ 21,567, at 108,614. Due to the AO's concession, the Board stated, "we will not hear evidence ... regarding mathematical imbalance which has been admitted by [the AO]." Joint Appendix, *SMS Data*, Nos. 89-1504,-1505, at 112-13 (Fed.Cir. filed Dec. 21, 1989) (transcript). Despite the admission by the AO and the Board's refusal to hear evidence on mathematical imbalance, the Board held that although the record shows that FDC's prices vary from year to year, "we cannot find that they are in excess of the value of the fiscal year requirements in question" and therefore "we do not consider them—[AO's] admission notwithstanding—to be mathematically unbalanced." *SMS Data*, 89-1 BCA ¶ 21,567, at 108,615.

■ The concept of "mathematical imbalance" is rooted in Comptroller General Decisions and Board precedent. *See Storage Tech. Corp.*, GSBCA No. 9345-P, 88-2 BCA ¶ 20,667, at 104,445; *SMC Information Sys., Inc.*, GSBCA No. 8071-P, 85-3 BCA ¶ 18,388, at 92,236; *Fidelity Moving & Storage Co.*, 86-1 CPD ¶ 476, at 3; *Crown Laundry and Dry Cleaners, Inc.*, 83-1 CPD ¶ 438, at 4. Mathematical imbalance occurs "if each bid item fails to carry its share of the cost of the work (or supplies) plus the bidder's profit/overhead or if the bid is based upon nominal prices for some items and enhanced prices for others." *SMS Data*, 89-1 BCA ¶ 21,567, at 108,614 (quoting *Storage Tech.*, 88-2 BCA ¶ 20,667, at 104,445); *see, e.g.*, *SMC Information*, 85-3 BCA ¶ 18,388, at 92,236; *Fidelity Moving*, 86-1 CPD ¶ 476, at 3; *Crown Laundry*, 83-1 CPD ¶ 438, at 4.

■ SMS argues that mathematical imbalance, alone, violates the solicitation, and federal regulation 41 C.F.R. §§ 201-32.-205-3(g)(c)(3) & (d) (1989) (separate charges prohibition and fixed price option, respectively).[1] The regulation reads:

---

1. The solicitation provides that the contract price must "reasonably represent[ ] the value of a bona fide fiscal year's requirements, rather than representing, to any extent, a portion of any other fiscal year's requirements.... If a determination is made that an offer does not

(c)(3) *Separate Charges.* Separate charges, in any form, are not solicited. Offerors [sic] containing any charges for failure to exercise any option will be rejected.

(d) Selection of an offer shall be made on the basis of lowest overall cost, price and other factors considered, to the Government provided that the contract price reasonably represents the value of *bona fide* fiscal year requirements, rather than representing, to any extent, a portion of any other fiscal year's requirements.... If a determination is made that an offer does not meet these criteria, that offer cannot be accepted for award.

41 C.F.R. §§ 201–32.205–3(g)(c)(3) & (d).

Neither section forbids acceptance of any and every mathematically imbalanced bid, i.e., a bid including items that fail to carry their share of the cost of the work plus profit or a bid based upon a nominal/enhanced pricing structure. But no bid meeting the definition of mathematically imbalanced can be accepted if it includes bid prices representing anything other than the value of a bona fide fiscal year's requirements, either in the form of explicit "separate charges" or implicit charges. Implicit charges occur if the price of an item is not proportional to its value, but instead includes part of another fiscal year's requirements.

The Board found that FDC's proposal did not contain any separate charges nor does it, in comparison to the other proposals, contain any implicit charges. *SMS Data,* 89–1 BCA ¶ 21,567, at 108,611. The Board found that FDC's prices in later contract years are not encompassed in early years' prices and:

> although [FDC's] prices do decrease over time, they are reasonable in all contract years. Reasonability can be determined by reference to the prices proposed by other offerors in this procurement.... [I]t can also be determined by reference to prices of similar [hardware and soft-

ware] items purchased through the General Service Administration's multiple award schedule contracts.

*Id.* at 108,615. The Board found that "SMS has not shown that [AO] will not receive reasonable value for any item in any fiscal year." *Id.* at 108,614.

The Board's findings that FDC's prices are reasonable, do not reflect any part of another year's fiscal year's requirements, and do not contain any separate charges, are not arbitrary, capricious, grossly erroneous, or unsupported by substantial evidence. Thus the Board's conclusion that FDC's bid did not violate the solicitation and regulation is correct. The mere fact that FDC's prices decline from a reasonable value between fiscal years does not violate the solicitation or regulation. A decline from a reasonable price represents a savings to the AO. Indeed, the solicitation specifically provides that offerors may even offer items free of charge. *See SMS Data,* 89–1 BCA ¶ 21,567, at 108,612 (Finding of Fact 13).

## II.

▮ SMS argues the Board improperly disallowed discovery of FDC's pricing data, which, SMS alleges, would demonstrate mathematical imbalance. This court reviews discovery rulings by administrative boards to determine if there is an abuse of discretion. *See Spezzaferro v. FAA,* 807 F.2d 169, 173 (Fed.Cir.1986). We cannot say the Board abused its discretion in this instance. Mathematical imbalance can be demonstrated without discovery of confidential pricing data. The Board found FDC's bid prices reasonable by comparing them to the other proposals and GSA multiple award schedule contracts. *SMS Data,* 89–1 BCA ¶ 21,567, at 108,615. Similar nonconfidential information could be used by SMS to attempt to show that FDC's bid exceeded the reasonable value of the bid items.

▮ SMS argues that the Board refused to hear evidence on the issue of

---

meet these criteria, that offer cannot be accepted for award." Solicitation, ¶ M.2.5. The solicitation, in ¶ M.2.4, also prohibits a bidder from

charging the government "[s]eparate charges" for failure to exercise options. Both provisions mirror the regulation discussed.

mathematical imbalance and that this was harmful error. The Board barred SMS from arguing the existence of mathematical imbalance because the AO admitted mathematical imbalance. It was error for the Board to bar evidence due to the admission and then decide the issue of mathematical imbalance contrary to the admission. The error, however, was harmless error because *mathematical* imbalance, alone, does not make a bid unacceptable. A bid must be *materially* imbalanced before it must be rejected. *See, e.g., Storage Tech.,* 88–2 BCA ¶ 20,667, at 104,445; *SMC Information,* 85–3 BCA ¶ 18,388, at 92,236; *Fidelity Moving,* 86–1 CPD ¶ 476, at 3–4; *Crown Laundry,* 83–1 CPD ¶ 438, at 4. Even assuming SMS could demonstrate mathematical imbalance without material imbalance, the bid could be accepted; SMS failed to prove material imbalance.

### III.

■ Material imbalance, a doctrine employed by the Comptroller General and the Board, occurs if an award fails to "represent the lowest ultimate cost to the Government or the imbalance is such that it will adversely affect the integrity of the competitive bidding system." *Storage Tech.,* 88–2 BCA ¶ 20,667, at 104,445; *see SMC Information,* 85–3 BCA ¶ 18,388, at 92,236; *Fidelity Moving,* 86–1 CPD ¶ 476, at 6.

■ SMS argues that FDC's bid is materially imbalanced unless the government can "guarantee" all option years will be exercised. The government cannot and therefore need not guarantee all options will be exercised. However, the government must have a reasonable expectation the option years will be exercised. *See Storage Tech.,* 88–2 BCA ¶ 20,667, at 104,-445 ("Material unbalancing has traditionally been limited to determining whether the Government reasonably expects to exercise its options."); *Fidelity Moving,* 86–1 CPD ¶ 476, at 6 ("clear reason" to doubt acceptance would result in lowest price for government as there was a "strong possibility" option year would not be exercised). Without that reasonable expectation, the AO would be unable to determine which bid

represents the lowest ultimate cost to the government over the life of a contract. In this instance, the Board found that the AO anticipated exercising all of its options under the contract. *SMS Data,* 89–1 BCA ¶ 21,567, at 108,611 (Finding of Fact 11). That finding is not arbitrary, capricious, grossly erroneous, or unsupported by substantial evidence.

Because FDC's prices were found to decline from a reasonable price, and the AO was found to have a reasonable expectation of exercising all options under the contract, the Board deferred to the AO's conclusion that FDC's bid represented the lowest ultimate cost to the government. The Board properly stated that "Whether [a bid is materially imbalanced] is something that is best known by the agency, for it is dependent on projected ordering patterns, and we therefore give broad discretion to contracting officers in deciding whether material imbalance is present or not in a proposal." *Id.* at 108,615. The discretion is subject to review and cannot be abused. SMS has not demonstrated, nor can we discern, that the AO abused its discretion in determining that FDC's bid represented the lowest ultimate cost to the government. Nor has SMS demonstrated how acceptance of FDC's bid by the AO would adversely affect "the integrity of the competitive bidding system."

### IV.

■ The AO and FDC devoted time and effort to fully briefing and preparing arguments on the second protest; however, SMS abandoned the appeal of that protest at oral argument. We conclude, moreover, that SMS' appeal from the second protest is frivolous.

Additionally, SMS included with its brief two charts, marked Exhibits C and D. *See* Brief for Appellant, *SMS Data,* Nos. 89–1504–1505 (Fed.Cir. filed Sept. 15, 1989). These charts were not of record in the Board proceeding, nor do they reflect any facts of record or findings of the Board. It is well-settled that this court may consider only the record made before the Board.

*See Ballard Medical Prods. v. Wright,* 821 F.2d 642, 643 (Fed.Cir.1987).

The charts included in SMS' brief are misleading as they appear to represent actual scoring evaluations made by the AO. Both charts are labelled "Point Scores for SMS and FDC" and show a side-by-side comparison of SMS and FDC bid evaluations. Exhibit C gives SMS a total score higher than FDC; Exhibit D shows SMS and FDC with equal scores. There is no accompanying explanation for why SMS' scores were increased on these charts, compared to the scores of record.

SMS has distorted the record in this instance, making it appear the charts, and data used in the charts, were before the Board. The charts, in fact, were not before the Board, are not supported by the record, are misleading, and should not have been offered to the court. *See Black & Decker, Inc. v. Hoover Serv. Center,* 886 F.2d 1285, 1289–90 (Fed.Cir.1989). Parties may not submit to this court evidence not of record, rely thereon and fail to identify such evidence as never having been presented to the previous tribunal. *Id.* As we have stated, "Distortion of the record ... wastes the time of the court and of opposing counsel, and imposes unnecessary costs on the parties and on fellow citizens whose taxes support this court and its staff." *Amstar Corp. v. Envirotech Corp.,* 730 F.2d 1476, 1486 (Fed. Cir.), *cert. denied,* 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984).

In light of the frivolous appeal of the second protest and SMS' inclusion in its brief of misleading charts that distort the record, SMS shall pay double costs on this appeal. Specifically, SMS shall pay to the AO an amount equal to double the AO's costs on this appeal. SMS shall pay to FDC an amount equal to double FDC's costs on this appeal. Both sums are to be paid within 30 days of the date of this opinion. Fed.R.App.P. 38; *see Toepfer v. Department of Transp.,* 792 F.2d 1102, 1103 (Fed.Cir.1986).

AFFIRMED.