**M. BIANCHI OF CALIFORNIA,**
Appellant,

v.

**William J. PERRY, Secretary of Defense, Appellee.**

No. 93–1087.

United States Court of Appeals, Federal Circuit.

Aug. 10, 1994.

Michael A. Hordell, Petrillo & Hordell, Washington, DC, argued for appellant. With him on the brief was Jessica C. Abrahams. Robert Allan Brunette, of Flintridge, CA, represented appellant.

Geoffrey C. Cook, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director.

Before ARCHER, Chief Judge *, NEWMAN and CLEVENGER, Circuit Judges.

ARCHER, Chief Judge.

## DECISION

M. Bianchi of California (MBOC) appeals the July 31, 1992 decision of the Armed Services Board of Contract Appeals (ASBCA or board), ASBCA Nos. 37029 and 37071 (consolidated), denying MBOC royalties based on two value engineering change proposals it submitted during the performance of its government contract. We vacate and remand.

## DISCUSSION

### I.

MBOC operated a garment manufacturing business with its plant in Santa Ana, California. On November 7, 1979, the Defense Personnel Support Center (DPSC) of Philadelphia, Defense Logistics Agency (DLA), awarded MBOC Contract No. DLA100–80–C–2290 for the manufacture of 26,250 Air Force women's pantsuit coats for a total contract price of $902,212.50. MBOC's contract included a value engineering clause, which is intended to encourage a government contractor to find and propose ways of saving money for the government. *See, e.g., Philco–Ford Corp.*, ASBCA No. 16197, 73–1 B.C.A. (CCH)

---

* Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

¶¶ 46,491, 46,493 (1973). A proposal is submitted as a value engineering change proposal ("VECP"), the formalities for which are described in the contract. If the government accepts a properly submitted VECP, it will award the contractor a portion of the savings accrued as a result of the proposal. The clause may also provide for the contractor to receive royalties as a result of savings on certain future and concurrent contracts that use the contractor's VECP.

The clause in MBOC's contract outlined how a VECP could be accepted:

(d) *Acceptance.* The Contracting Officer may accept, in whole or in part, by contract modification either before or within a reasonable time after performance has been completed under this contract any VECP submitted pursuant to this clause. Until a contract modification applies a VECP to this contract, the Contractor shall remain obligated to perform in accordance with the terms of the existing contract. Contract modifications made pursuant to this clause will so state. The decision of the Contracting Officer as to the acceptance of any VECP under this contract (*including the decision as to which clause is applicable to the proposal if this contract contains both a "Value Engineering Incentive" and a "Value Engineering Program Requirement" clause*) shall be final and shall not be subject to the "Disputes" clause of this contract.

(Emphasis in original.) The clause also set out how sharing or royalties would be determined as a result of any cost savings from an accepted VECP. The value engineering clause in MBOC's contract provided for a royalty of fifty percent of the direct savings on the instant contract as a result of an accepted VECP. It also allowed royalties on savings from any concurrent or future contracts for purchases of "essentially the same" item that used the accepted VECP:

(2) *Concurrent Contracts.*

(i) If the VECP accepted under this contract is also used on concurrent contracts of the purchasing office for essentially the same items, the Contractor shall be paid a share of any savings as calculated in (ii) below.

. . . .

(3) *Future Contracts.*

. . . .

(ii) If the VECP accepted under this contract is used on future purchases of essentially the same item by the purchasing office, or its successor, the Contractor shall share in the savings on all affected end items scheduled for delivery not later than 3 years after acceptance of the first item incorporating the VECP, or until the originally scheduled delivery date of the last affected end item under the instant contract, whichever is later.

MBOC's contract required it to package the pantsuit coats and ship them five to a box in accordance with Purchase Description ENEU 78–7. On December 5, 1979, MBOC submitted VECP 1180 to DPSC proposing that the size of the boxes be increased by either two or four times the specified depth to hold either ten or twenty coats. After considering the proposal, DPSC notified MBOC on April 18, 1980 that it could not be adopted, and was thus rejected, because the smaller quantities required by the contract were necessary to satisfy storing and small scale distribution requirements.

On July 9, 1980, MBOC submitted a second proposal, VECP 8780, pertaining to packaging requirements in which it proposed putting ten coats, instead of five, into the existing boxes because five coats did not, in MBOC's opinion, properly fill the box. Again, however, the government rejected this proposal for the same reasons VECP 1180 was rejected. MBOC completed its performance and delivered the garments to the government in November 1980 under the original terms of the contract.

MBOC was not the only contractor to manufacture, package and ship women's pantsuit coats for the government in accordance with Purchase Description ENEU 78–7. In September 1980, DPSC contracted with a second contractor, VI–MIL, Inc., on terms similar to those in MBOC's contract, including the provision that VI–MIL ship the pantsuit coats in boxes of specified size. Like MBOC's contract, VI–MIL's contract contained a value engineering clause.

On May 13, 1981, VI–MIL submitted VECP 6381, which recommended that DPSC permit the contractor to pack twenty coats in modified boxes with approximately twice the depth of the existing boxes. In September 1981, the government accepted VI–MIL's proposal in modified form. The government's modification required packing fifteen coats per extended box instead of the proposed twenty. DPSC then issued a modification to VI–MIL's contract incorporating the approved changes on March 2, 1982. The modification, which changed the specifications of Purchase Description ENEU 78–7, informed VI–MIL that "no savings were realized on the instant contract since the contract was shipped complete before acceptance of the VECP." Although VI–MIL did not receive any compensation on its contract, the contract modification provided that VI–MIL would be entitled to a 50% royalty for savings by the government on any future purchases made of the subject item.

On March 2, 1988, MBOC submitted a claim for royalties for its VECP 1180, certified in accordance with the Contracts Disputes Act of 1978 (CDA), apparently after learning that the packaging specification for women's pantsuit coats had been changed in VI–MIL's contract. MBOC believed that the changes made in VI–MIL's contract and in Purchase Description 78–7 had originally been proposed by its VECP 1180. On March 11, 1988, MBOC submitted a similar claim for its VECP 8780. When the government's contracting officer failed to issue a final decision in response to either of these claims, MBOC appealed the claims to the ASBCA.

In its appeal, MBOC asserted that the government had rejected its VECPs in bad faith and that they had been "constructively accepted" because the government adopted the same concepts in VI–MIL's contract. MBOC noted that under its contract acceptance could occur after its contract was performed. MBOC therefore claimed it was entitled to compensation for any savings to the government on any contracts incorporating its VECP "concepts" within the three year royalty period defined in MBOC's contract.

MBOC sought to recover some $30 million in royalties based on alleged savings to the government on concurrent and future contracts with other contractors. Included in these alleged savings were collateral costs related to depot storage space requirements and administrative costs. Further, MBOC contended that two items are "essentially the same" if the VECP "concept" can be applied to other items shipped in boxes. MBOC's calculated royalty claim was therefore based on any DPSC contract where packing level requirements were changed during the thirty six month royalty period. MBOC also argued that all inferences should be drawn against the United States in calculating the savings and resulting royalties because the government had been uncooperative during discovery.

In the board proceedings the government initially contested MBOC's position on constructive acceptance. Later, however, the government admitted the following allegations in MBOC's complaint:

> On information and belief, MBOC's concept in VECP 1180 of enlarging the size of the box to permit the packaging of more than five coats per box was subsequently utilized on other DPSC contracts. In particular, DPSC modified the contract specification for the Air Force women's pantsuit coats in Contract No. DLA100–80–C–3571 [VI–MIL's contract] to incorporate packaging specifications similar to that proposed by MBOC in VECP 1180. In that contract, DPSC required the packaging of fifteen coats per box and a box depth of fifteen inches.

> . . . .

> DPSC constructively accepted MBOC's VECP by modifying contract specifications to allow contractors to package more than five coats per box. Under the Value Engineering clause in MBOC's contract, MBOC is entitled to share the cost savings resulting from the use of VECP 8780 for concurrent and future contracts.

ASBCA Nos. 37029 and 37071, at 11–12 (finding no. 20). This concession was later confirmed by another government attorney who told the court:

MR. GOEKE: The previous Government counsel amended our answer and conceded that it was constructive acceptance of the VE [sic]. I was going to contest that but this litigation is just so frustrating that Government's position is we constructively accepted the VE [sic]. ASBCA Nos. 37029 and 37071, at 12 (finding no. 21). In reliance on these concessions, MBOC released the government from its obligation to reply to its discovery requests regarding entitlement. When the government subsequently tried to disavow its concessions the board ruled that the government was bound. The board accordingly held a hearing on both VECP claims solely on the issue of quantum.

The board issued a decision denying compensation to MBOC. Although the board recognized that the government had made concessions as to entitlement and was bound by them, it ruled that the question of whether MBOC was entitled to compensation was a legal matter which could not be conceded by the government attorneys. Thus, the government concession was limited to the factual matter of the constructive acceptance of MBOC's VECPs in a different contract. The board concluded that it was free to review the ultimate legal question of MBOC's entitlement.

The board denied compensation to MBOC on the basis of this court's decision in *John J. Kirlin, Inc. v. United States*, 827 F.2d 1538 (Fed.Cir.1987). The board interpreted *Kirlin* as requiring that the government must accept a VECP, either expressly or constructively, prior to the completion of the contract before a contractor would be entitled to any royalties from the VECP. In other words, there can be no constructive acceptance of a VECP after the proposer's contract has expired. The board then found that MBOC's VECPs had been rejected in good faith by the government and that the constructive acceptance conceded by the government had occurred after MBOC's contract had ended.

The board also determined that even if the VECPs had been timely accepted, MBOC would not be entitled to all of the claimed royalties because its definition of "essentially the same item" was "palpably unreasonable"

in light of the wording of the clause. In support of its decision, the board noted that MBOC's contract was not for shipping boxes.

## II.

█ We review the board's decision on legal questions under a *de novo* standard and we review the board's factual determinations for substantial evidence. 41 U.S.C. § 609(b) (1988); *see SMS Data Products Group, Inc. v. United States*, 900 F.2d 1553, 1555 (Fed. Cir.1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

█ The government conceded that it constructively accepted the concept of MBOC's VECPs when it modified VI–MIL's contract in response to VI–MIL's proposal. The board correctly reasoned, however, that under our decision in *Kirlin* this action would not create a legal entitlement to compensation if such acceptance occurred after the contractual relationship between the MBOC and the government ceased. In *Kirlin*, the General Services Administration (GSA) rejected Kirlin's VECP proposal to replace certain air dampers in addition to the heating, ventilation and air conditioning work specified in its contract because the GSA determined that the change would have resulted in only marginal cost savings. 827 F.2d at 1539. After Kirlin finished its contract, however, the GSA replaced these dampers. Kirlin submitted a claim for royalties for its VECP claiming that it had been constructively accepted by the GSA. This court affirmed the Claims Court's denial of royalties, determining that "Kirlin [was] not entitled to compensation in this case because its proposal was not accepted." *Id.* at 1541. The court noted that the VECP had been denied in good faith and that there was no basis for an implied in fact contract. In response to Kirlin's arguments of constructive acceptance, the court stated that "[w]hen the contract is completed, the contractual relationship ends, and there is no basis for constructive acceptance of a VECP." *Id.*

MBOC argues that *Kirlin* should be limited to its facts because it is in conflict with board precedent and that it should be limited to construction contracts where there are no provisions for savings from concurrent and future contracts that use the accepted VECP. We do not find MBOC's arguments persuasive. First, to the extent *Kirlin* may be in conflict with any board precedent, this court's precedent is controlling.[1] Second, nothing in *Kirlin* states or implies that its holding should be limited to construction contracts. The rationale for precluding constructive acceptance of a VECP after the contractual relationship ends holds equally true for contracts that allow concurrent or future contract savings. Once the contract has ended and the government has denied the VECP in good faith, there is simply no privity between the contractor and the government under which there could be conferred on the contractor a contractual right. The court in *Kirlin* rejected the idea that submission of a VECP creates a proprietary right in the idea of the proposal. 827 F.2d at 1541. If the government rejects the proposal in good faith and the contract terminates, the VECP terminates with the contract.

 This conclusion does not conflict with the language of the acceptance portion of MBOC's value engineering clause. That language provides that a contracting officer may accept a VECP within a "reasonable time" after performance. Because its VECPs were formally rejected, assuming that rejection was in good faith, we do not view this language as permitting MBOC to claim constructive acceptance by actions occurring after the contractual relationship terminated. At most, it permits the government to accept a VECP after the contract period when it had not previously acted. In VI–MIL's case, although the VECP was not accepted prior to the completion of VI–MIL's shipping the goods, VI–MIL's contract was still extant

and was modified to reflect acceptance of its VECP.

We also affirm the board's interpretation of the contract term "essentially the same" item. MBOC contends this language confers upon it a three year proprietary right to the idea of putting more items in a box and using bigger boxes to ship more items at once. MBOC boldly claims a right to share in any cost savings accrued by DPSC for using this unremarkable idea for a thirty six month royalty period. We, like the board, find MBOC's interpretation overreaching.

MBOC's VECPs proposed two different ways to ship more pantsuit coats of a particular type per box. We agree with the board that if MBOC is entitled to any recovery it would be limited to savings on other contracts for shipping women's pantsuit coats. The "items" referred to in the contract are the ones manufactured and shipped pursuant to the contract. As correctly interpreted by the board, the term "essentially the same" does not refer to the items capable of being shipped in a box—rather it refers to pantsuit items purchased under other concurrent or future contracts. The submission of a VECP does not confer any proprietary right in the "concept" of the proposal. The board, therefore, correctly interpreted the contract language regarding the scope of the VECPs in concurrent and future contracts. *Kirlin*, 827 F.2d at 1541.

We also affirm the board's decision that MBOC was not entitled to any alleged "collateral" savings. As noted by the board, although the government could have provided for such savings in MBOC's contract, it did not do so.

 While we agree with the board's decision as to the import of our decision in *Kirlin* and its decision relating to interpretation of the relevant contract language, we must nevertheless vacate the board's decision as to entitlement. Because of the board's ruling

---

1. In addition, we note that in all the cases cited by MBOC in support of its theory of constructive acceptance, the contract at issue was changed to incorporate the VECP. *Northeastern Manufacturing and Sales, Inc.*, ASBCA No. 38307, 90–1 B.C.A. (CCH) ¶ 22,562 (1989); *Gulf Apparel Corp.*, ASBCA No. 27784, 89–2 B.C.A. (CCH) ¶ 21,735 (1989); *SCM Corp.*, ASBCA Nos. 26544 et al., 85–1 B.C.A. (CCH) ¶ 17,783 (1984); *Philco–Ford Corp.*, ASBCA No. 16197, 73–1 B.C.A. (CCH) ¶ 9,917 (1973); *North American Rockwell Corp.*, ASBCA No. 14485, 71–1 B.C.A. (CCH) ¶ 8,773 (1971). Thus the board cases cited by MBOC are readily distinguishable from *Kirlin*.

that the government was bound by its concessions as to entitlement and that a hearing would be held strictly on the question of quantum, MBOC was deprived of an opportunity to present its entitlement case. In reliance on both the government's concessions and the board's ruling, MBOC released the government from its discovery obligations regarding the issues of entitlement and did not put on evidence as to entitlement. We are convinced that MBOC should have the opportunity to obtain discovery and present evidence on its allegations that the government rejected its proposals in bad faith and that its VECPs were constructively accepted in a competitor's contract prior to the termination of its own contractual relationship with the government. In this connection, MBOC alleged that its contract with DPSC ended after the implementation of its VECPs in VI–MIL's contract. Accordingly, we vacate the decision of the board and remand this case for a hearing on the issue of entitlement consistent with this decision.

No costs.

*VACATED AND REMANDED.*