**VANTAGE ASSOCIATES, INC., Appellant,**

v.

**Gordon R. ENGLAND, Secretary of the Navy, Appellee.**

No. 01–1073.

United States Court of Appeals, Federal Circuit.

Oct. 9, 2001.

Before MICHEL, RADER, and LINN, Circuit Judges.

PER CURIAM.

The Navy awarded a contract to Vantage Associates, Inc. (Vantage) to produce a quantity of underwater marking devices used by dolphins in the Government's Marine Mammal System. Several years after all items except for one $5 spare part were delivered, Vantage submitted a Value Engineering Change Proposal (VECP) under the terms of that contract asserting that the contract was still active based on the outstanding $5 spare part. The Navy maintained that the contract was closed and rejected Vantage's VECP. Vantage appealed the rejection of its VECP to the Armed Services Board of Contract Appeals (Board). The Board upheld the Navy's rejection. ASBCA No. 51418, 00–2 B.C.A. (CCH) ¶ 31,141, 2000 WL 1499269. Vantage appeals the decision of the Board upholding the Navy's rejection of Van-

tage's VECP. Because the Board erred in concluding that the contract was terminated before Vantage's VECP submission, this court *reverses* and *remands*.

## BACKGROUND

Vantage operates a business that manufactures certain components for military applications. The Navy awarded Vantage Contract No. N66001–91–C–0225 (the 0225 contract) on September 30, 1991. The 0225 contract incorporated by reference a Value Engineering clause based on Federal Acquisition Regulation (FAR) 52.248–1,[*] which was intended to encourage Government contractors to propose and find ways of saving money for the Government. *Bianchi v. Perry*, 31 F.3d 1163, 1164 (Fed. Cir.1994). If the Government accepts a properly submitted Value Engineering Change Proposal (VECP), the Government will award the contractor a portion of the savings accrued as a result of the proposal. *Id.* At issue in this case is whether Vantage properly submitted the VECP before termination of the 0225 contract.

One of the building materials for the devices Vantage contracted to build was 10 percent glass-filled polyethylene with a flexural modulus of $>120,000$ pounds per square inch (CL–100). Contract specifications suggested Phillips 66 Company (Phillips) as the source provider for this material. Soon after Vantage began work on the 0225 contract, Phillips announced that it would no longer manufacture CL–100. Upon notification of this decision, Vantage and RMB, another contractor, with the knowledge of the Government, began attempts to find an alternate material.

Prior to locating an alternate material, Vantage completed delivery of all items under the 0225 contract, with the exception of one $5 spare part, on September 22,

1993. The Navy did not detect the missing $5 part in Vantage's last shipment, and Vantage did not notify the Navy by sending a "delay in delivery" notice as required under the 0225 contract. Vantage did not issue a final invoice to the Government for the $5 part, and the Government did not make a final payment for it. The Government, without notice to Vantage, closed the contract on its books on August 31, 1995.

On January 18, 1996, Vantage notified the Government that it had located a possible alternate material known as Superlink 110, which could result in a 90 percent cost reduction as compared to CL–100. Soon after, the Government and Vantage began coordinated testing of Superlink 110. On August 19, 1996, Vantage notified the Government that Superlink 110 complied with all contractual requirements, except for the flexural modulus requirement.

In early 1997, the Government advertised a new procurement for additional underwater marking devices, which identified Superlink 110 as an acceptable alternative to CL–100. In response, Vantage submitted a VECP for Superlink 110 under the requirements of FAR 52.248–1 and identified the 0225 contract as the contract to which the VECP applied. In the VECP, Vantage maintained that use of Superlink 110 could represent a $700,000 savings to the Government. Before ruling on the admissibility of Vantage's VECP, the Government awarded Vantage the advertised procurement as a follow-on contract (the 0040 contract).

In a final decision dated October 6, 1997, the reviewing Government contracting officer rejected Vantage's VECP, stating that it did not apply to any current contract. Vantage appealed that decision to the Armed Services Board of Contract Ap-

---

[*] FAR 52.248–1 defines a VECP as a proposal that "(1) [r]equires a change to this, the *instant contract,* to implement; and (2)[r]esults in reducing the overall projected cost to the agency...." 48 C.F.R. 52.248–1 (1989) (emphasis added).

peals (Board). The Board concluded that Vantage's VECP was not properly submitted before termination of the 0225 contract. In reaching this conclusion, the Board addressed its decision in *M. Bianchi of California*, ASBCA Nos. 37029, 37071, 96–2 B.C.A. (CCH) ¶ 28,410, 1996 WL 375762. The Board concluded that the appellant in *Bianchi* was distinguishable on two grounds. First, the appellant in that case had a larger outstanding balance yet to be billed to the Government. The Board reasoned that unlike Bianchi, Vantage had yet to bill the Government for a *de minimus* $5 spare part. Second, the appellant in *Bianchi* submitted its VECP during performance of its contract, not years after completion. The Board noted that Vantage did not submit its VECP until years after all other items were delivered under the 0225 contract. Accordingly, the Board held that the 0225 contract was terminated before Vantage's VECP submission. ASBCA No. 51418, 00–2 B.C.A. (CCH) ¶ 31,141, 2000 WL 1499269. Vantage appeals the Board's decision. This court has jurisdiction over this appeal pursuant to the Contracts Dispute Act, 41 U.S.C. § 607(g)(1), and 28 U.S.C. § 1295(a)(10).

## DISCUSSION

### Standard of Review

■ This court reviews the Board's decisions on legal questions *de novo* and the Board's factual determinations for substantial evidence. 41 U.S.C. § 609(b) (1994); *SMS Data Products Group, Inc. v. United States*, 900 F.2d 1553, 1555 (Fed. Cir.1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Although conclusions of law are reviewed *de novo*, some deference is given to the Board's

interpretations of applicable contract regulations because it has expertise in the area. *Bill Strong Enters. v. Shannon*, 49 F.3d 1541, 1546 (Fed.Cir.1995).

### Analysis

#### I.

■ To be eligible for a VECP award, Vantage must have had a *current* contractual relationship with the Government. *Kirlin v. United States*, 827 F.2d 1538, 1541 (Fed.Cir.1987). "When the contract is completed, the contractual relationship ends, and there is no basis for ... acceptance of a VECP." *Id.* According to the FAR provisions on contract completion in effect on August 31, 1995, the date on which the Government closed the 0225 contract, a contract is "physically completed" when:

(1) (i) *the contractor has completed the required deliveries* and the Government has inspected and accepted the supplies;

(ii) *the contractor has performed all services* and the Government has accepted these services; and

(iii) all option provisions, if any, have expired; *or*

(2) *the Government has given the contractor a notice of complete contract termination.*

48 C.F.R. 4.804–4(a) (1994) (emphasis added). In addition, the FAR provides that the office administering a contract is responsible for initiating administrative close-out of the contract after receiving evidence of its physical completion. 48 C.F.R. 4.804–5(a). The office initiating administrative close-out must ensure, among other things, that the contractor's closing statement is completed and that a final invoice has been submitted. *Id.* ¶ 13–14. Once these actions are completed, the contracting officer must ensure that final pay-

ment has been made. 48 C.F.R. 4.804–5(b)(8). The FAR contains no provisions that allow the contracting officer to ignore these provisions when only a *de minimus* amount remains unaccounted for.

## II.

Vantage contends that the 0225 contract was not "physically completed" because none of the elements of 48 C.F.R. 4.804–4(a) was satisfied. Vantage maintains that 4.804–4(a) was not satisfied because Vantage had not delivered the $5 part as required under 4.804–4(a)(1), and that the Government had not given Vantage notice of complete contract termination under 4.804–4(a)(2). In addition, Vantage contends that the contracting officer did not verify that Vantage's final invoice had been submitted or that final payment had been made under 4.804–5(a), (b)(8). Based on these facts, Vantage argues that the Board's conclusion that the contractual relationship had ended was wrong as a matter of law.

Vantage refers for support to the Board's decision in *M. Bianchi of California*, ASBCA Nos. 37029, 37071, 96–2 B.C.A. (CCH) ¶ 28,410, 1996 WL 375762. In that case, the Board held that a contract was still extant, even after final shipment of goods, because the contractor had failed to bill the Government for the final shipment, and the Government had not paid for the final shipment. In *Bianchi*, as is arguably true in the instant case, the contractor had deliberately not billed the Government to keep the contract open for a longer period of time. The Board in *Bianchi* nevertheless concluded that the contract still existed even though no further goods remained to be shipped. ABSCA No. 37029, 96–2 B.C.A. (CCH) ¶ 28,-410. This case is similar with one notable exception that appears in Vantage's favor–Vantage still had an outstanding part, albeit a $5 spare part, yet to be shipped.

The Government argues that *Bianchi* is distinguishable from the instant case because the VECP in *Bianchi* was filed much earlier and the final shipment and corresponding payment involved were substantial. In *Bianchi*, the contractor filed a VECP during performance of its contract and well before final shipment was completed. ABSCA No. 37029, 96–2 B.C.A. (CCH) ¶ 28,410. In contrast, Vantage filed its VECP nearly four years after its last substantial shipment.

Perhaps an even more important distinction between the cases is the differing amounts yet to be billed by each contractor. In *Bianchi*, the contractor did not invoice the Government for a final shipment of 670 pantsuit coats. ABSCA No. 37029, 96–2 B.C.A. (CCH) ¶ 28,410. Vantage, by contrast, did not invoice the Government for a $5 spare part. The Board concluded that the $5 outstanding part was *de minimus* in view of the total contract price of $1,955,339.05. The Board ultimately found the foregoing distinctions conclusive and declined to analyze *Bianchi* further. Based on these facts, the Board concluded that Vantage no longer had a contractual relationship with the Government. The Board presumably based this conclusion on the finding that Vantage had performed sufficiently to meet the provisions of 48 C.F.R. 4.804–4(a)(1). However, the record reflects no findings by the Board that either 4.804–4(a)(1) or (2) was met. The issue in this case is whether the 0225 contract was in fact "physically completed" before Vantage's VECP submission.

## III.

For the 0225 contract to have been "physically completed" before Vantage submitted its VECP, either 48 C.F.R. 4.804–4(a)(1) or (a)(2) must have been met. Section 4.804–4(a)(1) was not met because Vantage had not completed all deliveries required under the 0225 contract. Wheth-

er a *de minimus* exception applies in this case is beside the point. Moreover, section 4.804–4(a)(2) was not met because the contracting officer did not give Vantage notice of the Government's intent to declare the 0225 contract complete. Because 4.804–4(a)(1),(2) were not met before Vantage's submission of its VECP, the 0225 contract was not terminated at that time.

### CONCLUSION

The Board was incorrect as a matter of law when it concluded that the 0225 contract was terminated before Vantage submitted its VECP. Accordingly, this court reverses the decision of the Board that the 0225 contract was terminated before Vantage's submission of its VECP, and remands. The issue of recovery based on the Government's "constructive acceptance" of Vantage's VECP is rendered moot.