# United States Court of Appeals for the Federal Circuit

05-1511

APPLIED COMPANIES,

Appellant,

v.

Francis J. Harvey,
SECRETARY OF THE ARMY,

Appellee.

Peter B. Jones, Jones & Donovan, of Newport Beach, California, argued for appellant.

James W. Poirier, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director.

Appealed from:    Armed Services Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

05-1511

APPLIED COMPANIES,

Appellant,

v.

Francis J. Harvey,
SECRETARY OF THE ARMY,

Appellee.

_____

DECIDED:  July 14, 2006

_____

Before MICHEL, Chief Judge, NEWMAN and RADER, Circuit Judges.

MICHEL, Chief Judge.

Applied Companies ("Applied") appeals the decision of the Armed Services Board of Contract Appeals ("Board") denying the majority of its claim under the Value Engineering clause of its contract with the United States Army.  Applied Co., ASBCA No. 50593, 04-2 BCA P32,786 (Nov. 2, 2004).  Because the Board correctly concluded that Applied was not entitled to share in future savings on air conditioner ("AC") models not covered by Applied's contract with the Army, we affirm.

I

In 1985, Applied entered into a contract with the United States Army Troop Support Command ("TROSCOM") to supply 36,000 ("36k") BTU/HR horizontal ACs ("Applied ACs").  The contract incorporated by reference the 1984 version of FAR

52.248-1, entitled "Value Engineering" ("VE clause"), which provides that "[t]he Contractor is encouraged to develop, prepare, and submit value engineering change proposals (VECP's) voluntarily. The Contractor shall share in any net acquisition savings realized from accepted VECP's, in accordance with the incentive sharing rates in paragraph (f) below." For a fixed-price contract such as Applied's, paragraph (f) provides that the contractor shall be entitled to fifty percent of the net acquisition savings under the instant contract and future contracts.

In 1989, Applied's CEO, Barney Klinger, suggested to Col. Clarence Mills, then the Deputy Commander for Procurement and Readiness at TROSCOM, and to a Mr. Mabrey, TROSCOM's Director of Procurement and Production, that certain parts in the Applied AC could be replaced with commercial parts at significant savings. A few months later, Col. Mills met with Mr. Klinger at a trade conference and suggested that Applied submit a VECP. Following several additional meetings with TROSCOM, Applied submitted a VECP on July 7, 1989, which contained a list of specific commercial part substitutions for the Applied AC. The Army Contracting Officer ("CO") conditionally accepted the VECP on July 25, 1989, pending successful testing of the "commercialized" ACs. The CO unconditionally accepted Applied's VECP on October 15, 1990, and calculated the "Contractor Share of Net Instant Acquisition Savings" to be $1,540,181.

On January 9, 1995, Applied submitted a claim to the Army for "one half anticipated savings of the total of $81 million to be realized by the Army" owing to the Army's "abandonment of 'specified source control' vendors" in favor of commercially available parts for all twenty-three air conditioning models covered by military

specification MIL-A-52767.[1]  Applied conceded that its VECP was limited to the Applied

AC, and that the VECP "effectively excluded the collateralized savings expected" from

the application of commercialization to the entire family of ACs, yet argued that it was

entitled to share in cost savings for "the concept proposed by Applied in the VECP."  In

a follow-up letter, Applied reiterated that, in its VECP, it had "agreed to forego

collateralized savings on other Army contracts wherein commercial components would

be substituted."  Nonetheless, Applied argued that it was entitled to VE savings for all

AC models to which the Army had applied the commercialization concept included in

Applied's VECP.

On November 27, 1996, the CO denied Applied's claim for lack of proof of

entitlement.  In October 2001, the parties settled the matter of instant savings, leaving in

dispute only future savings, for which Applied sought $19,806,796.[2]  The Board held an

evidentiary hearing on November 11, 2001, at which Col. Mills, Mr. Mabrey, and Mr.

Klinger testified.  Three years later, the Board issued a plurality opinion awarding

Applied nearly $1 million, representing fifty percent of the savings on future purchases

of 36k BTU/HR horizontal ACs.  The plurality denied the remainder of Applied's claim

---

[1]    Military specification MIL-A-52767 covered a total of twenty-three air conditioning models in five sizes (6k, 9k, 18k, 36k, and 60k BTU/HR), vertical and horizontal configurations, and various electric power classes.  Each of the twenty-three models had its own detailed design drawing package.  The components of each model were basically the same, but varied in size, capacity, and shape.

[2]    The Board quantified Applied's claim by taking fifty percent of Applied's initial demand for a share of the Army's $81 million cost savings, or $40.5 million, and splitting that amount equally between the two Applied VECP claims appealed to the Board.  (The second claim related to another VECP, submitted under a separate contract for 36k BTU/HR vertical ACs, and was settled in October 2001.)  Accordingly, Applied originally sought $20.25 million in this suit.  Following the October 2001 partial settlement, that claim was reduced to the present figure.

because Applied failed to prove the "future unit cost savings" for ACs other than the 36k BTU/HR horizontal model. Thus, the plurality held that the VE savings was applicable only to future purchases of 36k BTU/HR horizontal ACs, and not to ACs of any other size or configuration.

Applied filed a motion for reconsideration, arguing that the Board committed legal error in placing upon it the burden of proving future unit cost reduction. On June 13, 2005, the Board issued a reconsideration opinion affirming its original decision. Applied Co., ASBCA No. 50593, 05-2 BCA P32,986 (June 13, 2005) ("Reconsideration"). This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## II

The dispositive issue on appeal is to which AC models the VECP applies; this inquiry involves both the regulatory language of the VE clause and the language of Applied's agreement with the Army. Interpretation of regulations and contracts are questions of law that we review de novo. Lane v. Principi, 339 F.3d 1331, 1339 (Fed. Cir. 2003) (regulatory interpretation); Lockheed Martin IR Imaging Sys. v. West, 108 F.3d 319, 322 (Fed. Cir. 1997) (contract interpretation).

## A

Part (b) of the VE clause defines "Acquisition savings" as "savings resulting from the application of a VECP to contracts awarded by the same contracting office or its successor . . . for essentially the same unit." It defines "Unit" as "the item or task to which the Contracting Officer and the Contractor agree the VECP applies." Part (c) of the VE clause, which discusses VECP preparation, instructs that the Contractor "shall include in each VECP . . . (3) Identification of the unit to which the VECP applies." The

language of the regulation is unambiguous. It is incumbent upon the contractor to propose a definition of "unit", and thus to propose any additional models for which it seeks to share in cost savings, in its VECP. As with any other contract term, the parties may then negotiate from the contractor's proposal until a final agreement is reached.

To determine the scope of VE savings, the proper focus of the analysis is the agreement between the CO and the contractor. Here, that "agreement" consists of: Applied's VECP; mod P9, which conditionally accepted the VECP; and mod P15, which unconditionally accepted the VECP.

The language of the VECP is unambiguous. It names only the contract for the Applied AC, and indeed specifies only the Applied AC's unique drawing set. After submitting its VECP, Applied sent three subsequent letters of correction and clarification, none of which purported to alter the scope of the VECP, and two of which referred specifically to "the commercialization of the 36k Horizontal [AC]." As AJ Kienlen rightly noted in his opinion concurring with the Board's reconsideration decision, the VE clause "clearly allow[s] the parties to agree that the VECP applies to the entire family [of ACs]." Reconsideration, slip op. at 11 (Kienlen, A.J., concurring). But the parties here clearly did not reach such an agreement. Rather, their agreement could embrace no more than the Applied AC, for that is all Applied proposed, and all that the modifications accepted.

Likewise, the language of mod P9 is unambiguous. In mod P9, the parties agreed that the VECP was accepted conditionally as applicable to "[horizontal AC] 36,000 BTU/HR". Of particular note, mod P9 also provided that there would be "zero"

future units scheduled for delivery during the sharing period and stated: "It is mutually understood and agreed that there will be no future contract sharing provisions."

The Board plurality found the conditional nature of mod P9 to make it inherently ambiguous, primarily because mod P9 lacked cost savings and price adjustment calculations, which could only be determined after the completion of testing. The Board also found mod P9's language that "the negotiated settlement method shall be the 'Lump-Sum Settlement Method'" to contradict language indicating that Applied would not be entitled to future savings, because the VE clause only mentions a lump-sum settlement method as an option with <u>future</u> contract savings. <u>See</u> FAR 52.248-1(h)(5)(i)(4). Accordingly, the Board proceeded to discern the parties' intent with respect to future savings.

The failure of mod P9 to include certain key terms does not render the parties' agreement ambiguous. To the contrary, mod P9 explicitly stated that "after submission of [testing] data and pursuant to the Value Engineering clause of the contract, the savings will be negotiated and contractually definitized by modification." That latter modification was mod P15, which unconditionally accepted Applied's VECP and contained the cost savings information missing from mod P9. Mod P15 included the total net instant acquisition savings, and broke that figure into the government's share and the contractor's share. Consistent with mod P9, mod P15 indicated "N/A" in all fields referring to future contract savings. The inclusion in mod P9 of language referring to the lump-sum payment method for future contract savings was, at most, irrelevant, given the clarity with which both documents indicated that no future savings would be

awarded. Accordingly, we hold that mod P9 and mod P15, read together harmoniously, clearly provide that Applied is not entitled to share in future savings.

Because there is no ambiguity in Applied's agreement with the Army, there is no role in this case for parol evidence. Applied's counsel asserted at oral argument that Col. Mills not only discussed the idea that later led to this VECP, but also negotiated this VECP, and Col. Mills offered "uncontroverted" testimony that the Army intended Applied's VECP concept to apply to the entire family of ACs. If Col. Mills intended to include additional AC models within the scope of the VECP, then he should have communicated that intent to the CO, so that it could have been incorporated into the writings. If the contract modifications proferred by the Army failed to state accurately the oral agreement entered into with Col. Mills, Applied should not have agreed to them. Moreover, if the agreement had been ambiguous, which it is not, then the CO—the party specifically tasked by the regulation with entering into an agreement with the contractor regarding VECP scope—would have been the proper Army representative to offer clarification as to the parties' intent. Col. Mills was not a party to any contract.

**B**

We also reject Applied's contention that it is entitled to share in VE savings for additional AC models because the "purpose" of its VECP was "commercialization." Applied argues that although its VECP was directed solely to the Applied AC, the concept behind the VECP was generally to "replace source . . . controlled items with . . . commercial items" under military specification MIL-A-52767. In its original claim, Applied explained that it was seeking to share in the cost savings for all AC models based on a "unilateral new policy initiated by the President and implemented by the

Department of Defense Secretary . . . requiring the Pentagon to use commercial standards rather than the complex and detailed military standards", which, it stated, "is exactly the concept proposed by Applied in the VECP."

Applied's contention that a contractor may share in cost savings from a proposed "concept" may seem to some appealing; arguably, it may provide a greater incentive for contractors to develop cost-saving initiatives than does the current system. Unfortunately, Applied's position is not only unsupported by the regulatory language, it is also contrary to this court's precedent. In M. Bianchi of Cal. v. Perry, 31 F.3d 1163 (Fed. Cir. 1994), we held that a VECP for packing pantsuit coats more efficiently in shipping boxes did not entitle the contractor to share in contract savings from the military's use of this packing method with other products. We explained that "the 'items' referred to in the contract are the ones manufactured and shipped pursuant to the contract", and thus, that "the submission of a VECP does not confer any proprietary right in the 'concept' of the proposal." Id. at 1168. Cf. John J. Kirlin, Inc. v. United States, 827 F.3d 1538, 1541 (Fed. Cir. 1987) ("[T]he first contractor to propose a change based on a particular idea acquires no proprietary rights in the proposal that would allow him priority over a subsequent proposal based on the same idea.").

### III

Because the agreement between Applied and the Army provided unambiguously that Applied was not entitled to share in any future savings, the Board correctly declined to award Applied a share of future savings for additional AC models. Accordingly, the decision of the Board is

### AFFIRMED.